GLADNEY, Judge.
This suit was filed on behalf of Mrs. Lenore Louise Bell[1] for recovery of benefits under two health and accident policies, Numbers 5186215 FG (hospitalization) and 5186216 MS (surgical), in which Union Bankers Insurance Company was the insurer. The action so filed sought penalties and attorneys’ fees as provided for in LSA-R.S. 22:657, and an additional demand was made on the defendant for damages for mental anguish, pain and suffering for alleged fraudulent breach of contract. After a trial on the merits, of the case judgment was rendered awarding plaintiff the amount of $488.50 but denying demands for penalties, attorneys’ fees and damages for breach of contract. From the judgment both parties have appealed.
The question presented, simply stated, is whether Union Bankers Insurance Company had just cause to issue and attach as part of policy No. 5186215 FG a certificate of reinstatement abrogating liability for the policy holder’s claim for sickness requiring major surgery and hospitalization.
The salient facts are not in dispute. Two policies were purchased by Mrs. Bell in 1955; one is for hospitalization and one for surgery benefits. Hereafter both policies are considered as one. Premiums totaling $9.05 were payable in advance on the 23rd day of each month and a grace period of 30 days was allowed for the payment of premiums. Premium notices were regularly forwarded on the 13th day of each month. Payments were required to be paid at the home office of the company at Birmingham, Alabama. Each policy was subject to the provisions of the Louisiana Insurance Code, (LSA-R.S. 22:1 et seq.) and particularly part six thereof, Sections 211-220 pertaining to health and accident insurance. Especially applicable herein are its provisions with reference to reinstatement [2] and noncancellable policies.[3] On *782 October 8, 1965 there was attached to the hospitalization policy a certificate of reinstatement which reads:
“This is to certify that the policy described above, issued or heretofore assumed by Union Bankers Insurance Company, is hereby reinstated as of the date of reinstatement shown above. Such reinstatement shall be subject to the terms of the policy, which provides that the reinstated policy shall cover accidental injuries sustained after the date of reinstatement and sickness which commences more than ten days after the date of reinstatement.
“In Witness Whereof, UNION BANKERS INSURANCE COMPANY has issued this Certificate of Reinstatement on the date of reinstatement shown above.
“This policy has been reinstated with restrictions. See enclosed waiver.”
By attachment to the policies Union Bankers Insurance Company agreed that it would not have the right to cancel the policy except for nonpayment of premiums.
Mrs. Bell was hospitalized in August of 1964 some nine years after the policy had been in force. It was then found that the policy holder had cancer. Her claim for $216 was paid. Her next claim was made during May of 1965 and the insurer again conceded liability and paid $54.55. On October 8, 1965 the insured was hospitalized 17 days and underwent surgical procedure for a colostomy. On the later date the insurance company issued the certificate of reinstatement disclaiming liability for the hospitalization and surgery.
Subject to statutory requirements and public policy an insurance company under our law has the right by contract to limit its liability and impose conditions upon their obligations. It is the contention of the insurer that the certificate of reinstatement was properly issued on October 8 for-asmuch as the premium due on August 23 was in default and the payment received on October 5 was beyond the 30 day grace period. In order to determine if the company is correct in this respect we refer to the table showing the following payment of premiums from January 23 through September and the dates on which payments by Mrs. Bell were credited at the home office of the company.
Date of Check Date Received and Credited
January 23, 1965 January 26, 1965
March 22, 1965 March 24, 1965
April 23, 1965 April 26, 1965
May 3, 1965 May 5, 1965
June 30, 1965 July 6, 1965
July 29, 1965 August 4, 1965
August 15, 1965 August 17, 1965
September 30, 1965 October 5, 1965
The manner in which payments were credited by the insurer is disclosed in its letter of December 1, 1965 which stated:
“The December 23rd, 1964 check was credited for premium due December 23, 1964. The January 23rd, 1965 was credited for January 23rd premium due. However, we received no payment in February and the March 22nd check was credited as the February 23rd premium. The subsequent checks dated in April, May and June were applied as the March, April and May premiums and the July 29th and August 15th checks paid the June and July premiums. The policy then lapsed due to nonpayment of the August 23rd premium and when the September 30th check was received, it *783 was used to reinstate the policy as of October 8, 1965. Since then we have received two more payments and the policy is now paid to January 8, 1966 * * * ”
The method followed by the company in crediting the payments is important. It followed a procedure of crediting the premiums paid to the oldest indebtedness irrespective of the month for which the payment was made. By reference to the schedule of payments it will be observed that the premium due on February 23 was not paid. The March premium was then credited to the payment due in February and each succeeding payment was imputed to the preceding month. The effect of this method was to throw each of the seven payments made from March 23 to September 30, inclusive, in arrears. The company kept on accepting the payments and gave no notice that the February premium had not been paid. It is contended that the right to so impute the payment of the premiums in this manner is authorized by LSA-C.C. Art. 1901, by the certificate of reinstatement and LSA-R.S. 22:213, subd. A (2). Examination of the policy discloses no express authorization to impute the payments as was done by the insurer. Nor does the insurance laws of this state sanction the method employed.
Plaintiff argues with considerable merit that if defendant’s reinstatement procedure is correct a pattern of late premium payments and collections could permit the insurer to receive payments indefinitely on a policy which would be continuously out of benefit.[4] In the instant case if we impute the payment received on October 5 to the date of September 23, and payments made for the other months, including March 23, none of such payments would be beyond the grace period and the policy would be in force through October 23. We disapprove of the insurer’s acceptance of the last seven payments made by the policy holder without notifying her of the nonpayment of the February premium prior to October 8. Furthermore, the insurance company during May of 1965 recognized and paid a claim presented by the policy holder. Under these circumstances certainly Mrs. Bell was fully justified in believing that her payments through October 8 gave her full protection under the policy.
When the February premium was not paid during the grace period the insurer had a reasonable time under the insurance code to issue its certificate of reinstatement with limitation of liability. Certainly a reasonable period of time would be ten days following receipt of the delinquent payment. A delay of seven months with its resulting extension of monthly periods where the policy would be out of benefit is unreasonable. In our opinion the company is relegated to its remedy under LSA-R.S. 22:-214, (see note 3 supra) for the collection, of the nonpayment of the February premium by deduction from its payment of the claim.
We have concluded that plaintiff’s claim for penalties and attorneys’ fees under LSA-R.S. 22:657 has merit inasmuch as *784 under the circumstances above related the insurer’s action was arbitrary and unreasonable. Accordingly, attorneys’ fees of $250 are fixed and a penalty of double the amount due under the contract is assessed.
Counsel for plaintiff on the appeal complains that the trial judge erred in failing to receive evidence or give consideration to its demand against the insurance company in tort. We concur in the holding of the trial court that plaintiffs’ action rests solely on contract.
For the reasons hereinabove stated, the judgment appealed from is reversed in part and amended to read
It is hereby ordered, adjudged and decreed that there be judgment herein in favor of plaintiffs, James Stewart Bell and Jacqueline Anne Bell, in the full sum of $977 and the additional sum of $250 as attorneys’ fees, together with legal interest from date of judicial demand until paid. The defendant-appellant is taxed with all costs.

. Mrs. Lenore Louise Bell, one of the plaintiffs herein, having died, her only-child, Jacqueline Anne Bell, has been substituted as a party-plaintiff.

. “Section 213. A. Required provisions —Each such policy shall contain in substance the following provisions, or * * (2) Reinstatement: If default be made in the payment of any agreed premium for this policy, the subsequent acceptance of such defaulted premium by the insurer or by any agent authorized by the insurer to accept such premium, shall reinstate the policy, but the reinstated policy shall cover only loss resulting from accidental injury thereafter sustained or loss due to sickness beginning more than ten days after the date of such acceptance.”

. Both of said policies having been in force for a period of more than three years from date of issue became noncancellable and incontestable as provided in Section 214, which states that where the policy becomes a claim by “disablement of the insured occurring during such period of grace before the overdue premiums or the deferred premiums of the current policy year, if any, are paid, the amount of such premiums may be deducted from any amount under the policy in settlement.”

. In Sholes v. Continental Casualty Company, La.App., 196 So.2d 680 (4th Cir. 1967) the court answered the argument by stating:
“ * * * But in the absence of statutory provisions to the contrary, insurance companies as well as individuals have the right to limit their liability, and to impose whatever conditions they please upon their obligations, provided such conditions are not inconsistent with public policy: the courts have no right to add anything, or take anything away, from such contracts. And we know of no law in this state prohibiting the use of the reinstatement provision in the instant case under defendant’s interpretation thereof. On the contrary, the statutory law specifically permits, and the jurisprudence consistently has approved of such a provision, as so interpreted, which has been held to be not contrary to public policy. * * *” [196 So.2d 680, 682]
The ruling in this case, however, was limited by the provisions in Slides’ policy to the effect that with a reinstatement no premium accepted could be applied to a period more than 60 days prior to the date of reinstatement.