Beatrice S. Burstein, J.
This case involves the application of a clear and unambiguous statute to a notice canceling a policy of fire insurance. Neither Blackstone’s Commentaries nor learned treatises on canons of construction suggest the guidelines. We turn, instead, to Alice’s timeless inquiry: “ the question is whether you can make words mean so many different things.” (Lewis Carroll, “ Through the Looking Glass, IV”.) The answer, ¡which the relevant statute provides, is “no”.
The facts are not in dispute. In May, 1970, the plaintiffs applied to the Government Employees Insurance Company (GEICO) for a policy of Home Owners Insurance. GEICO issued Policy No. H-413220 which covered a period of three years from May 6, 1970 to May 5, 1973.
Concededly, plaintiffs paid no premiums for this policy.
*1058 On August 4, 1970, GEICO advised plaintiffs’ mortgagee, Metropolitan Savings Bank (<£ Metropolitan ”), that the policy had been canceled effective August 29, 1970 for nonpayment of premiums. On or about October 9, 1970, plaintiffs forwarded to GEICO, the sum of $118 pursuant to an application for a home owners policy for a three-year period. The comedy (or, better, tragedy) of errors was compunded when GEICO wrote to plaintiffs on December 1, 1970, acknowledging receipt of the $118, applied it to the plaintiffs’ account, and issued home owners policy No. 413220 covering the period October 9, 1970 to October 9, 1973. Apart from the fact that the number so assigned was identical with that of the original policy, GEICO’s letter referred to the policy as “reissued” and recited that, although the original policy had been canceled, effective August 29,1970, it had been reissued “ effective October 9, 1970 ’ ’, when the payment was posted.
The saga does not end here, because there was an unearned premium for the original policy of $37. On March 24, 1971, plaintiffs received a copy of a notice of a claim by GEICO for this amount. The original notice, addressed to Metropolitan, referred to policy No. 413220 but did not identify the specific policy to which it was applicable. It is singular, too, that GEICO failed to send a premium bill in October, 1971 for the period covering the year October, 1971 to October, 1972 and it is equally puzzling that neither Metropolitan nor the plaintiffs made any inquiry or objection. Despite these facts (from which one may infer either stupidity or cupidity), it is not correct to make the inductive leap that failure to send a bill in October, 1971 proved either that the policy of insurance was in force in December, 1971 or that it had lapsed in December, 1971.
Unbeknownst to plaintiffs and Metropolitan was the fact that GEICO or its relentless computer maintained two accounts: (a) one for the first policy; and (b) one for the second policy. The first showed a deficit of $37, but when that policy was canceled, this amount was voided as a bad debt or, at least, unworthy of suit because, as a matter of policy, GEICO never instituted proceedings to recover unpaid premiums of less than $50.
Computer technology or not, when the $118 was received by GEICO in October, 1970, plaintiffs were credited with that amount. In November, 1970, GEICO with or without the aid of its computer robot, unilaterally reversed the bad debt item of $37 and debited it to the second policy, thereby creating a balance of $37 due on the second policy. Notice of this sophis *1059 ticated, but bizarre, accounting procedure was not given to the plaintiffs.
In April, 1971, GrEICO sent plaintiffs a notice of cancellation, effective June 16, 1971, purportedly based upon the nonpayment of the $37, but that notice failed to indicate whether the first or the second policy was involved. This cancellation notice was sent to Metropolitan by plaintiffs. Plaintiffs’ unexplained silence was matched by Metropolitan’s incredible indifference. Silence and indifference, under ordinary circumstances, might warrant dismissal of the complaint. But these omissions were exceeded by GEICO’s egregious error. The fact is that no reference was made in the notice to the talismanie language of section 167-b (subd. 3, par. [ii]) of the Insurance Law which requires that an insurer state that it will furnish to the insured, upon request, a statement of the facts on which the cancellation is based.
On December 30, 1971, there was a fire at plaintiffs’ home The damages (stipulated by the parties) amounted to $14,784 for the real property and $10,000 for the personal property.
On January 21,1972, GEICO’s local office representative paid plaintiffs $1,000, but in February, 1972, GEICO disclaimed liability on the ground that the policy had been canceled. This suit then followed and plaintiffs also sued Metropolitan, charging it with negligence for failure to pay the premium or to notify them. Metropolitan cross-claimed, first against the plaintiffs for failure to maintain adequate insurance and, second, against the defendant GEICO for any loss it, Metropolitan, might incur in the event that plaintiffs’ complaint was sustained. GEICO, in turn, cross-claimed against Metropolitan for failure to forward the premium payments. Prior to trial, Metropolitan settled, without prejudice, the plaintiffs ’ claim against it.
In this congery of negligence, ineptness or plain incompetence, the nub of the matter is this: if the cancellation notice of April, 1971 was legally ineffective, the policy was in force in October, 1971, even if the premium payment of $118 could be applied, in part, to the $37 deficiency due for the initial policy, and even if no premium bill was submitted by GEICO to plaintiffs for the period from October 9, 1971 to October 8, 1972. Accordingly, this court must determine whether the notice of cancellation, purportedly effective June 16, 1971, was valid and binding. If it was, then GEICO had no obligation to render a bill in October, 1971, and the failure to do so would not vitiate the cancellation. On the other hand, if the notice of cancellation was legally insufficient, it is immaterial that a *1060 premium bill was rendered or that premiums were not paid in October, 1971, since the amount due for each premium year, under the terms of the policy, was determined by GEICO, before a bill for that amount would be rendered to an insured. For the same reason, it would be immaterial whether GEICO properly or improperly allocated a part of the premium payment of $118 to the $37 deficit. Although the decision in this case turns on.the precise requirements of the statute, we find that even if this was not so, defendant cannot proceed on the theory that, since the full premium for the policy effective on October 9, 1970, was not paid (because of the allocation of $37 to the pre-existing debt), a policy was not in effect. It is perfectly clear that, as a general rule, a part payment to a creditor does, indeed, authorize the latter to apply that payment to a prior indebtedness, unless the debtor specifically identifies the manner in which, the allocation is to be made. (Bank of California v. Webb, 94 N. Y. 467; Shahmoon Ind. v. Peerless Ins. Co., 16 A D 2d 716.) But the rule is not absolute. Circumstances do dictate its application. If one deals with a relatively unsophisticated creditor or debtor, the failuure of a debtor to demand a specific allocation is not necessarily dispositive. In this case, the plain fact is that the plaintiffs paid a premium bill in precisely the amount requested for the reissued policy, and GEICO nowhere indicated that any part of it would be allocated to the unearned premium of $37 (which, in any event, appeared to have been Canceled by an internal bookkeeping arrangement). Surely, considering the substantial lapse of time between the date of notice of cancellation of the initial policy and the date of reissuance, plaintiffs had no way of knowing that the debt of $37 would be deducted from the $118 premium payment. If anything, since GEICO admittedly treated the premium received on October 9, 1970 as payment for the reissued policy, plaintiffs could properly assume that no allocation or deduction had been made.
Once having elected to treat the $118 as payment for the reissued policy, GEICO could not revoke, revise or reverse that decision, without the consent of the debtor (43 N. Y. Jur., Payment, § 58). GEICO could not arbitrarily apply the payment to a debt which it omitted to note in its premium payment bill of $118 (Gennert v. Walton, 125 Misc. 255).
Counsel for the parties have failed to provide precedents in New York relating to the proper application of payments received by an insurance company when a policy is reinstated, and independent research by this court has been equally fruit *1061 less. However, the issue has been resolved in other jurisdictions where payment of a premium will be applied to the then current period or to the period commencing on the date of payment. (Bell v. Union Bankers Ins. Co., 213 So. 2d 780 [La.]; McDonald v. Metropolitan Life Ins. Co., 304 Pa. 213; Jones v. Preferred Acc. Ins. Co. of N. Y., 232 Wis. 102.)
Defendant’s reliance on the decision in First Sav. & Loan Assn. v. American Home Assur. Co. (29 N Y 2d 297) is misplaced. In the case at bar, the initially placed insurance expired on August 29, 1970. The reissued policy did not become effective until October 9,1970. The fact that the policy was described as “ reissued ” does not detract from the fact that the new policy had admittedly become effective at a time when the original policy had lapsed.
It is an ancient teaching (or possibly, prejudice) that policies of insurance are construed against the insurance company. One need not .be a consumer advocate to note the varieties of complex provisions, small and unreadable print, exclusions, exceptions, conditions and restrictions which, even in the standard fire policy, baffle the most experienced insured. This accepted legal principle of construction springs not from a judicial or legislative animus to insurance companies; it draws its substance from the historical thesis that a contract drawn by one party will, in the instance of ambiguity or contradictory or apparently inconsistent provisions, be construed against the party who prépared the instrument.
In this case, it is perfectly clear that when plaintiffs made payment of $118 and its receipt was acknowledged by GEICO on December 1, 1970, plaintiffs had responded precisely to the bill rendered by GEICO. If GEICO’s internal bookkeeping legerdemain, which resulted in the reversal of the $37 deficit, did not impair the efficacy of the policy, it remained in effect until October, 1971 and the cancellation notice given on April 24, 1971 was a nullity. This was intended to be and was a three-year policy and until a bill was rendered for the period October, 1971 to October, 1972, the plaintiffs could reasonably assume that the policy continued in effect. This is so, notwithstanding the somewhat incredible failure on the part of the plaintiffs and Metropolitan to protest the cancellation. While caution would have dictated an objection or inquiry, plaintiffs were insulated by the provision of section 167-b of the Insurance Law. The notice of cancellation did not state that GEICO would furnish to plaintiffs, upon request, a statement of the facts upon which the cancellation was based. (First Sav. & Loan Assn. v. *1062 American Home Assur. Co., supra; Government Employees Ins. Co. v. Mizell, 36 A D 2d 452; Fifty States Mgt. Corp. v. Public Serv. Mut. Ins. Co., 67 Misc 2d 778.)
There is no legislative history to which one may have recourse and the legislative materials explanatory of séction 167-b of the Insurance Law, are, to say the least, exiguous.
In these circumstances one may repeat the teaching of Mr. Justice Frankfurter “ for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute ” (Greenwood v. United States, 350 U. S. 366, 374). The plain meaning of the statute mandates a determination that the policy was in effect when the loss occurred and the cancellation notice was ineffective.
The motion by the defendant to amend the pleadings so as to reduce the ad damnum by the amount paid by Metropolitan to the plaintiffs is denied. Although Metropolitan and GEICO were codefendants at the commencement of suit, they were not joint obligors. The action against Metropolitan was grounded on negligence and not on contract.
There is no occasion here to invoke the Dole rule (Dole v. Dow Chem. Co., 30 N Y 2d 143). Since Metropolitan would 'have been liable only if defendant GEICO was absolved, the provision of section 15-104 of the General Obligations Law which prescribes a pro tanto discharge of one co-obligor where another makes payments on account of the obligation, is inapplicable. Hence, GEICO cannot be a beneficiary of the payments made by Metropolitan to the plaintiffs (cf. Codling v. Paglia, 38 A D 2d 154, affd. 32 N Y 2d 330; Grynbal v. Grynbal, 32 A D 2d 427, 430).
The doctrine of unjust enrichment is appealing but irrelevant here. The fact is that GEICO did not and could not claim that its funds were paid by Metropolitan to the plaintiffs. (Fields v. Western Millers Mut. Fire Ins. Co., 290 N. Y. 209; 50 N. Y. Jur., Restitution, § 34.)
Based upon all the evidence the court concludes: first, the contract of insurance was in effect on December 30, 1971 when the fire loss occurred and the defendant GEICO is liable to the plaintiffs in the amount of $24,784 without interest (an amount stipulated by the parties); second, GEICO is not entitled to a setoff of the amounts paid by Metropolitan when it settled its potential liability to the plaintiffs
All motions upon which decisions have been reserved are resolved by this decision.