Hillsborough
No. 7876

RONALD LAWTON

v.

GREAT SOUTHWEST FIRE INSURANCE COMPANY

September 27, 1978

608

*Cullity & Kelley*, of Manchester (*William H. Kelley* and *George W. Roussos* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*James Q. Shirley* orally), for the defendant.

BROCK, J. In this action the plaintiff seeks damages against his insurance company for its alleged failure to make payment of a fire loss pursuant to a fire insurance policy between the plaintiff and the defendant. After hearing, the trial court granted the defendant's motion to dismiss counts 1 and 2 of the plaintiff's declaration, which alleged an intentional failure and a negligent failure to make payment pursuant to the policy, and portions of count 3, which sought consequential damages in excess of the policy limits. Plaintiff's exceptions to these rulings were reserved and transferred by *Flynn*, J.

The plaintiff is the owner of a commercial building, located in Manchester, that was substantially damaged by fire on July 31, 1975. At the time, a portion of the premises was insured against fire by the defendant. The policy provided coverage up to $250,000 and also contained a loss of rentals endorsement with a limit of $55,000. Over the course of three-and-a-half months following the fire, the plaintiff and the defendant engaged in various negotiations in an effort to determine and settle the loss, which need not be further detailed here other than to note that no agreement concerning the extent of loss was ever reached and that the plaintiff's claim was never settled.

On November 19, 1975, the plaintiff brought the current action against the insurance company. In count 1 of his declaration, plaintiff alleges that the defendant "willfully, intentionally or recklessly and wantonly" failed to make payment to him pursuant to the policy "in an effort to compel and coerce [him] to compromise a claim against the defendant for an amount far less than for value, and to accept far less than full performance of defendant's contractual obligations. . . ." Count 2 alleges negligent failure to make payment pursuant to the policy. Count 3 is a plea in assumpsit alleging that the defendant failed to perform its obligation under the policy "to make fair, prompt and equitable payment. . . ." In all three counts plaintiff seeks recovery for damages which he alleges resulted from the defendant's failure to effectuate a prompt and equitable settlement, "including but not limited to, irreparable damage to the plaintiff's business and credit reputation, pain, suffering and mental anguish, and severe emotional distress; loss of use of his property, loss of business opportunity, additional damage to the property occasioned by the defendant's delay, and other financial damages. . . ." all in the amount of $500,000. The trial court granted the defendant's motion to dismiss counts 1 and 2, on the ground that there is

no recovery "*ex delicto* for the wrongful or wilful or negligent refusal of an insurer to settle a first party insurance claim. . . .'', and dismissed count 3 to the extent that it sought damages in excess of the insurance policy limits, on the ground that the damages available to the insured are limited to the contractual amount. For the reasons hereinafter stated, we affirm the court's ruling dismissing counts 1 and 2 of the plaintiff's declaration, and reverse its ruling relating to count 3.

■■ In determining whether the defendant's motion to dismiss should be granted, all facts properly pleaded are assumed to be true and the reasonable inferences therefrom are construed most favorably to the plaintiff. *Blake v. State*, 115 N.H. 431, 433, 343 A.2d 223, 225 (1975); *Green v. Shaw*, 114 N.H. 289, 292, 319 A.2d 284, 285 (1974). If the plaintiff is entitled to recover upon any state of the facts findable under the pleadings, the motion to dismiss must be denied. *Aldrich v. Beauregard & Sons*, 105 N.H. 330, 331, 200 A.2d 14, 15 (1964); *Nashua Iron and Steel Co. v. Worcester & N.R. Railroad Co.*, 62 N.H. 159, 161 (1882).

We first consider count 3 of the plaintiff's declaration, which alleges a breach of contract. The defendant advances three arguments in support of the court's ruling limiting the damages recoverable by the plaintiff to the policy limits: First, an insurance contract is merely an agreement to pay money, and that for breach of such an agreement the damages are limited to the money due, with interest; second, the contract itself restricts the insurer's liability to the policy limits; and third, the consequential damages plaintiff alleges to have suffered in his declaration could not have been foreseen at the time the parties executed the policy, and that therefore the defendant is not chargeable therewith.

It is true that generally the damages available for breach of a contractual obligation to pay money are the amount due, with interest. *Smith v. Wetherell*, 89 N.H. 106, 108, 193 A. 216, 218 (1937), *aff'd on rehearing*, 89 N.H. 106, 194 A. 129 (1937); *Richards v. Whittle*, 16 N.H. 259, 260 (1844). This rule has been applied to restrict damages for breach of an insurance contract to the contract amount, plus interest. 16 J. Appleman, Insurance Law and Practice § 8881, at 634 (1968) (and cases cited). The rule rests on the theory that money is always available in the market at the lawful rate of interest, and on the desirability of having a measure of damages of easy and certain application. 11 S. Williston, Contracts § 1410, at 606 (3d ed. 1968). We find these reasons unconvincing, however. First, money is not

always available in the market at the lawful rate of interest. "Aside from the fact that the commercial rate of interest might be double the legal rate, it is highly unlikely that a claimant who has recently suffered economic disaster would be able to obtain a loan at all." Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend*, 45 Fordham L. Rev. 164, 169 (1976) (footnotes omitted). Second, the desirability of simplicity in determining the extent of damages is insufficient to justify the denial of damages that are capable of proof and otherwise compensable. *See id.; Reichert v. Gen. Ins. Co. of America*, 59 Cal. Rptr. 724, 428 P.2d 860, 866 (1967), *vacated on other grounds*, 69 Cal. Rptr. 321. 68 Cal. 2d 822, 442 P.2d 377 (1968).

■ Defendant's argument that the insurance contract itself restricts the damages that are recoverable for breach of the contract to the policy limits is also unpersuasive. The policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach. *See, e.g., Home Indem. Co. v. Bush*, 20 Ariz. App. 355, 513 P.2d 145 (1973); *Asher v. Reliance Ins. Co.*, 308 F. Supp. 847, 851–52 (D.C. Cal. 1970); *Reichert v. Gen. Ins. Co. of America*, 59 Cal. Rptr. 724, 428 P.2d 860 (1967). The subject insurance contract limits the insurer's liability to $250,000 for damages that result from the casualties insured against, not its liability for damages resulting from its own breach of contract.

■ ■ Defendant's third argument correctly proceeds on the theory that the damages recoverable for breach of a contract are limited to the damages that "the defendant had reason to foresee as a probable result of its breach when the contract was made." *Emery v. Caledonia Sand & Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 932 (1977). However, we do not think that the financial injuries that the plaintiff alleges he suffered as a result of the defendant's failure or delay in payment are never foreseeable as a matter of law. Insurance is often obtained because the insured is not in a position to personally bear the financial loss occasioned by a casualty, and serious financial injuries may often result from an insurer's refusal or delay to make payment.

> Where the owner of a heavily mortgaged motel or other business property suffers a substantial fire loss, the owner may be placed in financial distress, may be unable to meet his mortgage payments, and may be in jeopardy of losing

his property and becoming bankrupt. A major, if not the main, reason why a businessman purchases fire insurance is to guard against such eventualities if his property is damaged by fire.

*Reichert v. Gen. Ins. Co. of America,* 59 Cal. Rptr. 724, 428 P.2d 860, 864 (1967), *vacated on other grounds,* 68 Cal. 2d 822, 69 Cal. Rptr. 321, 442 P.2d 377 (1968); *see Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1, 5 (7th Cir. 1972). To limit the insurer's liability to the policy limits plus interest as a matter of law would unnecessarily encourage insurers to delay settlement in an attempt to coerce a financially pressured claimant into accepting an unfair settlement, because its only liability would be to pay its original obligation and interest. *See* Note, *The Availability of Excess Damages For Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L. Rev. 164 (1976); 16 J. Appleman, Insurance Law and Practice § 8881, at 633 (1968); T. Lambert, *Commercial Litigation,* 35 Am. Trial Lawyers Ass'n L.J. 164, 225–26 (1974). In a given case the defendant may in fact have reason to know that its failure or delay to make payment will cause the insured severe financial injuries. Whether the defendant had knowledge of the facts and reason to foresee the injury will normally be a question of fact for the jury. *See Emery v. Caledonia Sand & Gravel,* 117 N.H. at 446, 374 A.2d at 932; *Johnson v. Waisman Bros.,* 93 N.H. 133, 135, 36 A.2d 634, 636 (1944); 5 A. Corbin, Contracts § 1011 (1964).

 The insured must, of course, prove that the insurer's failure or delay to make payment was a breach of contract. Not every delay or refusal to settle or pay a claim under the policy will constitute a breach of the contract. *Cf., e.g., Ledingham v. Blue Cross Plan for Hosp. Care of Hospital Serv. Corp.,* 29 Ill. App. 3d 339, 330 N.E.2d 540 (1975) (refusal reasonable); *State Farm Gen. Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974) (delay reasonable); *Amsden v. Grinnell Mut. Reins. Co.,* 203 N.W.2d 252 (Iowa 1972) (same). There is, however, implied in every contract an obligation of good faith and fair dealing. *Bursey v. Clement,* 118 N.H. 412, 387 A.2d 346 (1978); *Seaward Constr. Co. v. City of Rochester,* 118 N.H. 128, 383 A.2d 707 (1978). Where the defendant's failure to make prompt payment under the policy is to coerce the insured into accepting less than full performance of the insurer's contractual obligations, as is alleged here, there is a breach of this covenant. Whether the defendant's delay was in fact in bad faith, whether the damages alleged to have resulted from the delay were in fact foreseeable, and

whether these damages could have been avoided with reasonable efforts by the insured are questions for the jury. We hold that the trial court erred in ruling as a matter of law that the damages available to the insured for a breach of the insurance contract are limited to the policy amounts.

We next consider the plaintiff's counts sounding in tort.

Counts 1 and 2 seek to plead a tort claim for what is essentially a breach of contract. We are not unmindful of an emerging trend in other jurisdictions to hold insurers liable in tort for the wrongful refusal or delay to make payments due under an insurance contract. *See* 16 J. Appleman, Insurance Law and Practice § 8881 (Supp. 1977) (and cases cited therein). However, we are not persuaded by the reasoning of these cases.

These cases hold that the insurer's bad-faith refusal to settle or pay a claim pursuant to its contractual obligations is also a tort for which the plaintiff is entitled to recover all damages proximately caused therefrom. *See, e.g., Gruenberg v. Aetna Ins. Co.,* 9 Cal. 3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973); *Silberg v. California Life Ins. Co.,* 11 Cal. 3d 452, 113 Cal. Rptr. 711, 521 P.2d 1103 (1974); *Ledingham v. Blue Cross Plan for Hosp. Care of Hosp. Serv. Corp.,* 29 Ill. App. 3d 339, 330 N.E.2d 540 (1975). In this jurisdiction, however, a breach of contract standing alone does not give rise to a tort action. *See Barrett v. New England Tel. & Tel. Co.,* 80 N.H. 354, 117 A. 264 (1922). If, however, the facts constituting the breach of the contract also constitute a breach of a duty owed by the defendant to the plaintiff independent of the contract, a separate claim for tort will lie. *Busick v. Home Owners Loan Corp.,* 91 N.H. 257, 258, 18 A.2d 190, 191 (1941); *Dustin v. Curtis,* 74 N.H. 266, 269, 67 A. 220, 222 (1907).

The cases from other jurisdictions holding an insurer liable in tort in these circumstances proceed on the theory that the insurer has a special relationship to the insured which warrants the imposition of an independent legal duty to deal fairly with the insured. *See Mustachio v. Ohio Farmers Ins. Co.,* 44 Cal. App. 3d 358, 118 Cal. Rptr. 581 (1975); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal. App. 3d 376, 89 Cal. Rptr. 78 (1970). They find precedent for such a duty in the cases holding an insurer to a duty of reasonable care in the settlement of third-party liability claims, and plaintiff would have us adopt their reasoning by pointing to the cases from our own jurisdiction recognizing that the insurer has a duty of reasonable care in the settlement of a third-party liability claim. *Dumas v. State Farm*

*Mut. Auto Ins. Co.*, 111 N.H. 43, 274 A.2d 781 (1971); *Dumas v. Hartford Accident and Indem. Co.*, 92 N.H. 140, 26 A.2d 361 (1942); *Foster v. Calderwood*, 118 N.H. 508, 389 A.2d 1388 (1978). However, the policies that warranted recognition of such a duty to the insured in the third-party liability claim are inapplicable in the case of the first-party claim. "The dilemma presented by the absolute control of trial and settlement vested in the insurer by the insurance contract and the conflicting interests of the insurer and insured" in the third-party claim requires that the insurer recognize the conflict and give due regard to the interests of the insured. *Dumas v. State Mut. Auto Ins. Co.*, 111 N.H. at 46, 274 A.2d at 783. This dilemma is lacking in the first-party claim. The insurer is not in a position to expose the insured to a judgment in excess of the policy limits through its unreasonable refusal to settle a case, nor is it in a position to otherwise injure the insured by virtue of its exclusive control over the defense of the case. We therefore find no basis for extending the duty recognized in those cases to the first-party claim. *See Baxter v. Royal Indem. Co.*, 285 So. 2d 652 (Fla. App. 1973), *cert. denied*, 317 So. 2d 725 (Fla. 1975). We hold that allegations of an insurer's wrongful refusal or delay to settle a first-party claim do not state a cause of action in tort. *See Midwest Mut. Ins. Co. v. Brasecker*, 311 So. 2d 817 (Fla. App. 1975) *cert. denied*, 327 So. 2d 31 (Fla. 1976); *State Farm Gen. Ins. Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *Pendleton v. Aetna Life*, 320 F. Supp. 425 (E.D. La. 1970); *Merrin Jewelry Co. v. St. Paul Fire and Marine Ins. Co.*, 301 F. Supp. 479 (S.D.N.Y. 1969); *Bell v. Union Bankers Ins. Co.*, 213 So. 2d 780 (Ct. App. La. 1968), *cert. denied*, 215 So. 2d 131 (La. 1968).

In so holding we take cognizance of the fact that the legislature has established mechanisms designed to deal with insurer malfeasance in this area, which, in our opinion, vitiates the need for recognition of a new cause of action in tort. RSA 407:22 requires that every fire insurance policy issued in this State include a provision entitling each party, upon written demand, to select disinterested appraisers to appraise the loss, whose determinations shall be binding. *See Salganik v. U.S. Fire Ins. Co.*, 80 N.H. 450, 118 A. 815 (1922). The availability of this procedure "reduc[es] the hazards of the claim materializing into one for extra-contract damages." Kornblum, *The Defense of the First Party Extra-Contract Case: Strategy in Negotiations and Discovery*, 12 Forum 721, 730 (1977). In addition, RSA 417:4 XII declares it to be an unfair trade practice, if committed without just cause and performed with such frequency as

to indicate a general business practice, to refuse to attempt to effectuate prompt and equitable settlements where liability has become reasonably clear, or to unreasonably compel claimants to institute litigation to recover amounts due under insurance policies. *See also* N.H. Official Regulations and Bulletins—Insurance Department, Reg. No. 10. Penalties are prescribed to protect the consumer from these practices. RSA 417:10, :13, :19 (Supp. 1977). In addition, the insured has his remedies in equity for a settlement procured through fraud or as a result of mutual mistake, *see Maltais v. Nat'l Grange Mut. Ins. Co.*, 118 N.H. 318, 386 A.2d 1264 (1976); 6 J. Appleman, *supra* § 3980 (1972); or may be entitled to attorney fees if the insurer acted in bad faith in promoting unnecessary litigation. *Jeannont v. N.H. Personnel Comm'n*, 118 N.H. 597, 392 A.2d 1193; *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977). The availability of these remedies, while insufficient in our opinion to restrict plaintiff's recovery for breach of the insurance contract to the policy limits as a matter of law, militates against recognition at this time of an independent action in tort for an insurer's wrongful refusal or delay to settle a first-party insurance claim. *See* RSA 417:5-a (Supp. 1971). We therefore hold that the trial court on the pleadings before it did not err in dismissing counts 1 and 2 of the plaintiff's declaration.

We next consider the plaintiff's allegations of mental distress. Such damages are not generally recoverable in a contract action. *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 134, 316 A.2d 549, 552 (1974); *Dunn & Sons, Inc. v. Paragon Homes of New England, Inc.*, 110 N.H. 215, 218, 265 A.2d 5, 8 (1970). Our holding that counts 1 and 2 of the declaration in this case do not state a cause of action in tort requires that plaintiff's request for damages for mental suffering and emotional distress be dismissed. *See generally* Note, *Damages for Mental Suffering Caused by Insurers: Recent Developments in the Law of Tort and Contract*, 48 Notre Dame L. Rev. 1303 (1973).

The trial court also requested rulings on questions concerning the burden of proof in a claim of negligent misrepresentation and on the propriety of using a six-man jury in a civil case. These issues were neither argued orally nor briefed, and appear to involve substantial questions of law that could affect the interests of the parties. We therefore decline to consider them at this time. *See In re Gault's*

*Estate,* 116 N.H. 525, 363 A.2d 195 (1976); *McNamara v. Mac-Cormac,* 113 N.H. 540, 309 A.2d 916 (1973).

*Exceptions sustained in part and overruled in part; remanded.*

LAMPRON, C.J., and DOUGLAS, J., did not sit; GOODE, J., sat by special assignment pursuant to RSA 490:3; the others concurred.