**Emil SALAMEY, Plaintiff-Appellee,**

v.

**AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.**

**No. 83–1414.**

United States Court of Appeals,
Sixth Circuit.

Argued July 19, 1984.

Decided Aug. 28, 1984.

Robert F. Helfand, Susan Tukel (argued), Denenberg, Tuffley, Thorpe, Bocan & Patrick, Southfield, Mich., for defendant-appellant.

Roland J. Jersevic (argued), Saginaw, Mich., for plaintiff-appellee.

Before KENNEDY, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and NEESE, Senior District Judge.*

* Honorable C.G. Neese, Senior Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

PER CURIAM.

Aetna Casualty & Surety Company (Aetna) appeals from a judgment in favor of the plaintiff Emil Salamey for breach of a contract for fire insurance. On appeal, Aetna argues that the District Court erred in excluding certain evidence of motive and in awarding excessive damages for lost profits. We find that the trial court committed no error, and affirm.

Emil Salamey owned a convenience store in Bay City, Michigan, which was destroyed by fire in September 1980. Salamey had fire insurance coverage for the store from the defendant Aetna. In January 1981, Aetna denied Salamey's claim on the grounds that he had set the fire or caused it to be set and that he had committed fraud in submitting his claim. Salamey brought this action against Aetna for breach of contract.

At trial, neither party disputed that the fire was intentionally set. Aetna attempted to show that Salamey had an economic motive to set the fire by introducing expert testimony that the store was losing money. Aetna also showed that Salamey and his father had received interest-free loans due on demand from his uncles to purchase the store, and theorized that one uncle, Jaafer Khalil, had demanded repayment of his loan. Salamey in response offered evidence that he had raised the profit margin so that the store was making money, and that Khalil had not called in the loan.

The insurance contract included coverage for business interruption following a fire. Under the clause, the insured would receive compensation for business losses during the time required to resume normal business operations, not exceeding the time required to rebuild, replace or repair the insured property or in any case twelve months. The parties agreed that with due diligence Salamey's store could have been rebuilt in two and a half months. ·

The court instructed the jury, over Aetna's objection, that if Aetna's failure to pay Salamey's claim caused his inability to return to business, they could award damages for lost profits beyond two and a half

months and up to the time of trial. The jury found in favor of Salamey and awarded a verdict of $160,000 for loss of the building, $100,000 for loss of its contents, $13,500 for loss of profits for two and a half months after the fire, and $240,960 for additional loss of profits (or $7,530 per month). Aetna then filed this appeal.

Aetna argued, first, that the District Court erred in excluding evidence that the name of the insured and the assumed name of a convenience store in Saginaw had been changed in summer of 1981 from Mohammad Salamey (Emil's father) to Jaafer Khalil. This evidence was proposed originally to impeach Salamey's testimony that he owned the store in Saginaw and was excluded under Fed.R.Evid. 608(b) as an attempt to attack credibility by using extrinsic evidence to show a specific instance of conduct.

■ Aetna now argues that the evidence should have been admitted as direct evidence of Salamey's motive to burn the insured property. Under Aetna's theory, Salamey burned his store in Bay City for the insurance benefits in order to repay the money he had borrowed from Khalil, who had been laid off from his job. When Aetna refused to pay Salamey's claim, his father gave the store in Saginaw to Khalil as payment, according to Aetna. This theory is entirely speculative, however. The proffered evidence that Emil's father changed the ownership of his store in Saginaw tends to prove nothing material about the fire in Emil's store in Bay City. Since the evidence was not probative of a significant fact in the instant case, the District Court correctly excluded it under Fed.R.Evid. 402 as irrelevant.

Aetna also argues that the trial court erred in allowing the jury to award as damages compensation for lost profits beyond the two and a half months required for rebuilding. Aetna urges that the business interruption clause should be enforced according to its terms, which limit the recovery to income lost during the period theoretically required for rebuilding the

premises. *See Beautytuft, Inc. v. Factory Insurance Association*, 431 F.2d 1122 (6th Cir.1970).

■ This claim for lost profits is separate from the claims to enforce the insurance contract. "The policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach." *Lawton v. Great Southwest Fire Insurance Co.*, 118 N.H. 607, 392 A.2d 576, 579 (1978); *see Reichert v. General Insurance Co.*, 59 Cal.Rptr. 724, 729, 428 P.2d 860 (Cal.1967), *vacated on other grounds*, 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377 (1968). Salamey here is seeking to collect damages for losses occasioned by Aetna's breach of contract in failing to pay Salamey's claim under the policy. The business interruption clause is thus irrelevant to the measure of damages for breach of contract.

■ A contract to insure against fire loss is a commercial contract, and damages for its breach are "generally limited to the monetary value of the contract." *Parmet Homes, Inc. v. Republic Insurance Co.*, 111 Mich.App. 140, 149, 314 N.W.2d 453 (1981). *See also Clark v. Craig*, 29 Mich. 397, 401 (1874) ("For any mere delay in payment, interest is in law regarded as sufficient compensation."). However, Michigan law follows the rule of *Hadley v. Baxendale*, 156 Eng.Rep. 145 (1854), that "the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v. Massachusetts Mutual Life Insurance Co.*, 409 Mich. 401, 414, 295 N.W.2d 50 (1980). Thus, "[l]oss of profits which result from the breach may be considered in assessing damages" for breach of an insurance contract. *Parmet Homes*, 111 Mich.App. at 149–50, 314 N.W.2d 453.

■ In *Parmet Homes*, the Michigan Court of Appeals held that the plaintiff could not receive as consequential damages profits lost when, because the insurance company denied fire loss benefits to the insured, the insured was unable to participate in a planned venture with a third party. The court reasoned:

It is always true that nonpayment of insurance benefits will result in reduction of capital. However, it is also true that indemnity insurers do not contend [sic] to underwrite the claimant's future financial transactions by agreeing to pay an established amount for fire losses. *In cases where loss of profits has been awarded, the loss resulted directly from the nonperformance of the contract between the parties, not from the failure of another venture unknown to the defendant.* See, *Lorenz [Supply Co. v. American Standard, Inc.*, 100 Mich. App. 600,] 611–612 [300 N.W.2d 335 (1980) ], and cases cited therein. Unless the parties are both aware that a breach will affect a specific collateral enterprise, it cannot be said that the loss of profits from the other venture is within the contemplation of the parties.

111 Mich.App. at 150, 314 N.W.2d 453 (emphasis added). In contrast, the instant case involves only one enterprise, the convenience store in Bay City. Since Aetna did not argue that Salamey failed to mitigate his damages, the jury was entitled to conclude that his inability to rebuild and reopen the store resulted naturally and directly from Aetna's refusal to pay benefits for the fire loss. Accordingly, Salamey may recover lost profits from the store as consequential damages for the breach of this insurance contract.[1]

---

1. Only a few courts have specifically held that the owner of a business may recover lost profits as consequential damages for breach of contract by an insurance company in failing to pay a claim. *See Asher v. Reliance Ins. Co.*, 308 F.Supp. 847 (N.D.Calif.1970); *Reichert v. General Ins. Co.*, 59 Cal.Rptr. 724, 428 P.2d 860 (Cal. 1967), *vacated on other grounds*, 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978); *but see Polito v. Continental Casualty Co.*, 689 F.2d 457 (3d Cir.1982); *Brown Township Mut. Ins. Ass'n v. Kress*, 330 N.W.2d 291 (Iowa 1983). We believe, however, that Michigan would join those courts permitting the recovery of such damages. The Michigan Court

■ Finally, we note that Salamey has requested this Court to amend the judgment of the District Court to include loss of earnings at a rate of $7,530 per month until the judgment is paid, plus two and a half months for rebuilding the store. Salamey has not shown that he requested this type of award at trial; his pretrial statement describes loss of business earnings as "prorated to the time of the trial." Moreover, Salamey did not appeal from the judgment. Under these circumstances, we cannot consider his request.

We therefore affirm the judgment of the District Court.

of Appeals in *Parmet Homes,* while denying consequential damages under the facts of the case, indicated in the language quoted above a willingness to allow compensation for losses resulting directly from a breach of contract in the context of a case involving a fire insurance policy. In 1933, the Michigan Supreme Court held that, according to *Hadley v. Baxendale,* an insured could collect consequential damages for breach of a liability insurance contract. *Miholevich v. Mid-West Mut. Auto Ins. Co.,* 261 Mich. 495, 246 N.W. 202 (1933). The Sixth Circuit later relied on *Miholevich* as establishing a rule permitting consequential damages, although denying damages under the facts of the case. The court found "no proof that these injuries are the natural or usual result of the failure of an insurer to carry out the obligations of its contract." *Scottish Union & Nat'l Ins. Co. v. Bejcy,* 201 F.2d 163, 166 (6th Cir.1953). These precedents persuade us that the Michigan Supreme Court would permit compensation for lost profits that were the natural and usual consequence of a breach of an insurance contract.