William H. SHAHEEN, Patrick Cragin, PJ Pubs, Shaheen Construction Company, Inc.

v.

PREFERRED MUTUAL INSURANCE COMPANY, Utica Mutual Insurance Company.

Civ. No. 87–176–D.

United States District Court, D. New Hampshire.

July 30, 1987.

Daniel M. Cappiello, Dover, N.H., for plaintiffs.

James S. Yakovakis, Manchester, N.H., for Utica, Mut. Ins.

Russell F. Hilliard, Concord, N.H., for Preferred Mut. Ins.

## ORDER

DEVINE, Chief Judge.

In this action, plaintiffs William Shaheen, Patrick Cragin, PJ Pubs, and Shaheen Construction Company, Inc., bring suit against defendants Preferred Mutual Insurance Company ("Preferred") and Utica Mutual Insurance Company ("Utica") seeking compensatory and punitive damages for defendants' alleged breach of contract and tortious handling of plaintiffs' insurance claim. Plaintiffs also seek declaratory re-

lief regarding defendants' liability to them pursuant to their respective contracts of insurance.[1] This matter is presently before the Court on defendant Utica's motion to dismiss and plaintiffs' objection thereto.

In considering a motion to dismiss, the Court follows the established requirement that "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village Dist. of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983) (citations omitted), *aff'd without opinion,* 745 F.2d 43 (1st Cir.1984). In reviewing motions to dismiss, the Court's focus is limited to the allegations contained in the complaint itself. *Litton Indus. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978). The standard for granting a motion to dismiss is not the likelihood of success on the merits, but is whether plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The relevant facts as alleged by plaintiffs are as follows.

Plaintiffs Shaheen and Cragin own a parcel of land in York Beach, Maine, containing the Union Bluff Hotel and various appurtenant facilities ("Union Bluff"). The Union Bluff is leased to plaintiff PJ Pubs, and plaintiff Shaheen Construction Co., Inc., entered into a contract with Shaheen and Cragin to restore the Union Bluff. Plaintiffs Shaheen and Cragin obtained liability and fire casualty insurance on the Union Bluff through the Cotsibas Insurance Agency of Tilton, New Hampshire ("Cotsibas"). Their original insurance policy was issued by First State Insurance Company. In October 1986, at the initiative of Cotsibas, the First State Insurance Company policy was canceled and a policy covering the Union Bluff was issued by defendant Preferred. Unbeknownst to plaintiffs, Cotsibas had caused to be issued a builder's risk policy in the name of Shaheen Construction Company, Inc., and in-

correctly listed the location of the property as Rollinsford, New Hampshire.

On February 28, 1987, a fire occurred at the Union Bluff which completely destroyed the property. Plaintiffs made a claim under the Preferred policy, but on March 17, 1987, through an agent, George Heilshorn, Preferred informed plaintiffs that they were denying the claim based on Cotsibas' incorrect description of the property on the policy application. At that point, plaintiffs submitted a claim to Utica, the liability insurance carrier for Cotsibas, through Utica's adjuster, Bruce Connell. Although Mr. Connell initially advised plaintiffs that Utica would settle their claim within 30 days, no such settlement occurred, and this action was filed on May 6, 1987.

Utica has moved to dismiss this action on the basis that plaintiffs have no standing to maintain a direct action against Utica. For the following reasons, the Court agrees.

While plaintiffs' complaint is not a model of clarity as to the causes of action it asserts against defendant, the Court discerns the following four alleged bases for maintenance of the action against Utica: (1) violation of New Hampshire Revised Statutes Annotated ("RSA") 417:4 XV which details unfair claim settlement practices by insurers; (2) breach of Utica's insurance contract with Cotsibas, which plaintiffs allege they can litigate as third-party beneficiaries to the contract; (3) tortious handling of plaintiffs' claim submitted pursuant to the liability policy Utica issued to Cotsibas; and (4) declaratory relief in the form of a finding by the Court that Utica is liable to plaintiffs for the full amount of damages sustained as a result of the fire by virtue of its duty to insure Cotsibas. The Court will address each of these asserted causes of action seriatim.

*1. Claim under RSA 417:4 XV*

█ Plaintiffs allege that Utica's actions in response to plaintiffs' claim under the Cotsibas liability policy constitute unfair claim settlement practices in violation of

---

**1.** Jurisdiction is founded upon 28 U.S.C. §§ 1332, 2201, and 2202, the parties being di-

verse and the amount in controversy exceeding $10,000 exclusive of interest and costs.

RSA 417:4 XV. Ignoring any deficiencies in alleging a violation of RSA 417:4 XV,[2] the Court finds that plaintiffs may not proceed with this claim. RSA 417 does not presently provide for a direct civil action for a violation of any of the unfair insurance trade practices listed therein.[3] Rather, aggrieved parties must first seek administrative relief from the insurance commissioner, and a finding of a violation of the statute by the commissioner is required prior to the institution of a civil action for damages. RSA 417:19. No such administrative finding of violation of RSA 417:4 XV by Utica having been made, plaintiffs' claims pursuant to this statutory provision must be dismissed.

### 2. Breach of Contract Claim

■ Plaintiffs contend that Utica is liable to them for breach of its obligation of good faith and fair dealing under the liability insurance contract issued by Utica to Cotsibas. In *Lawton v. Great Southwest Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978), the New Hampshire Supreme Court recognized that allegations by an insured of bad faith and/or unfair dealing on the part of the insurer in the performance of an insurance contract state a claim for breach of contract. *Id.* at 612, 392 A.2d at 580. However, absent a determination of liability on the part of Cotsibas, the Court finds that plaintiffs may not maintain a direct action for breach of contract against Utica.

In general, a nonparty to a contract does not have a remedy for breach of the contract simply because performance of the contract would have made it possible for the nonparty to receive a pecuniary benefit. *Pstragowski v. Metropolitan Life Ins. Co.*, 553 F.2d 1, 4–5 (1st Cir.1977). In the context of liability insurance contracts, the New Hampshire Supreme Court has held that "[a]bsent ... a judicial determination of the insured's liability, the injured party may not proceed directly against the insurer." *Burke v. Fireman's Fund Ins. Co.*, 120 N.H. 365, 367, 415 A.2d 677, 678 (1980). The rationale for this holding is aptly explained by the Maine Supreme Judicial Court as follows.

The pre-trial negotiations which may be conducted between a tort claimant and a defending insurance company are *adversary* in nature and, hence, will not give rise to a *duty* to bargain in good faith, as claimed by plaintiff. A 'duty of good faith and fair dealing' in the handling of claims runs only to an insurance company's insured, *Bennett v. Slater*, 124 Ind. App. 67, 289 N.E.2d 144 (1972); *Sequros Tepeyac, S.A., Compania Mexicana v. Bostrom*, 347 F.2d 168 (5th Cir.1965); it derives from a covenant implicit in the provisions of the insurance contract establishing the insurer as the authorized representative of the insured and is, therefore, without application for the benefit of the adversary third party tort claimant. *Murray v. Mossman*, 56 Wash.2d 909, 355 P.2d 985 (1960); *Duncan v. Lumbermen's Mutual Casualty Company*, 91 N.H. 349, 23 A.2d 325 (1941). Indeed, that the insurer is the representative of the insured logically imports that the third party tort claimant's status as the adversary of the insured renders him, ipso facto, the adversary of the insured's agent. Thus, prior to the establishment of legal liability, as the tort claimant has no legal right to require the tortfeasor to negotiate or settle, it likewise lacks right to require such action by his representative. *Zahn v. Canadian Indemnity Company*, 57 Cal. App.3d 509, 129 Cal.Rptr. 286 (1976). This is true even if it is the insurer which voluntarily initiates the prelitigation negotiations with the injured tort claimant.

**2.** By its terms, RSA 417:4 XV provides that commission of any of the proscribed acts by an insurer constitutes unfair claim settlement practices *if* "performed with such frequency as to indicate a general business practice." Plaintiffs make no allegations as to Utica's committing the alleged acts in any context other than in reference to their own claim.

**3.** Legislation has been introduced in the 1987 session which would alter the remedies available for violation of RSA 417. *See* Nixon, *Tort Reform 1987—What's in Store from the Legislature*, 28 N.H.B.J. 219, 221 & n. 16 (1987).

*Francis v. Newton,* 75 Ga.App. 341, 43 S.E.2d 282 (1947).

*Linscott v. State Farm Mutual Auto Ins. Co.,* 368 A.2d 1161, 1163–64 (Me.1977) (emphasis in original).

■ Plaintiffs argue that an admission of liability by Utica negates the requirement of obtaining a judgment against Cotsibas prior to bringing the instant action. While plaintiffs in their memorandum repeatedly refer to Utica's having admitted liability, the allegations in the complaint and in the affidavit of plaintiff Shaheen attached to plaintiffs' memorandum do not support this characterization. Rather, all that is alleged is that Bruce Connell, an independent adjuster for Utica, told Shaheen in March or April 1987 that Utica would be making an offer of settlement on plaintiffs' claim within 30 days. This does not constitute an admission of liability. Without an explicit admission of liability or a judicial determination of same, plaintiffs may not claim the benefits of Utica's contractual obligations arising out of its contract with Cotsibas. Accordingly, plaintiffs' claims against Utica for breach of contract must be dismissed.

### 3. Tortious Failure to Settle Insurance Claim

■ Plaintiffs' complaint can also be construed to allege a cause of action sounding in tort for Utica's wrongful failure to settle their claim. It is long established under New Hampshire law that an insurance company owes its insured the duty to use reasonable care in the settlement of third-party claims and that the breach of this duty can result in the insurer's being held liable for an award in excess of the policy limits. *See, e.g., Cavanaugh v. General Accident Fire & Life Assurance Corp.,* 79 N.H. 186, 187, 106 A. 604, 604 (1919). However, it is equally well established that this cause of action may not be maintained by the third-party claimant.

> While a liability insurance company may be liable to its insured for negligence in failing to adjust a claim covered by its policy of insurance ..., it does not follow that the claimant may complain of the

negligence in question, for the duty of the insurer to exercise care in the handling of a claim against the insured arises from the relationship created by the policy.

*Duncan v. Lumbermen's Mut. Casualty Co.,* 91 N.H. 349, 350, 23 A.2d 325, 326 (1941) (citations omitted). *Accord, Scroggins v. Allstate Ins. Co.,* 393 N.E.2d 718, 721 (Ill.App.Ct.1979). Thus, to the extent plaintiffs' complaint states a cause of action for Utica's negligence in handling their claim, it must be dismissed.

### 4. Request for Declaratory Relief

■ Plaintiffs seek a declaration that Utica is liable to them for the full amount of damages sustained as a result of the fire by virtue of its position as liability insurer for Cotsibas. The Court does not agree that this is an issue properly determined in the instant action. As previously explained, the Court rejects plaintiffs' characterization of Utica's alleged offer of settlement as constituting an admission of liability. Thus, plaintiffs are asking the Court to declare Utica's liability to them—a declaration that requires the determination of Cotsibas' liability—in an action to which Cotsibas is not a party. This would clearly be improper.

> If it is impossible to separate the issues in such a way that an important, autonomous part of the dispute would be effectively settled by declaratory relief, then the declaratory action should be dismissed. Where, for example, plaintiff's rights are inextricably interwoven with the rights of others not privy to the declaratory action, the declaratory action would not serve a useful purpose in settling the controversy.

6A J. Moore, J. Lucas, and G. Grotheer, *Moore's Federal Practice* ¶ 57.08[4] at 57–49 (2d ed. 1986) (footnote omitted).

Plaintiffs do not raise the issue of the legal scope of insurance coverage, such as might be suitable for declaratory relief. *Morin v. Berkshire Mut. Ins. Co.,* 126 N.H. 485, 486, 493 A.2d 500, 500–01 (1985). Rather, they seek a factual determination as to a nonparty's legal liability to them. The Court concludes that this is not a prop-

er issue for resolution in the context of a declaratory judgment action. *See Metropolitan Property & Liability Ins. Co. v. Kirkwood,* 729 F.2d 61, 62 (1st Cir.1984). Accordingly, plaintiffs' request for declaratory relief must also be dismissed.

### Conclusion

In summary, for the reasons hereinabove stated, the Court finds that plaintiffs may not maintain any of the claims asserted against defendant Utica. Utica's motion to dismiss (document no. 5) must be and herewith is granted.

SO ORDERED.