Merrimack
No. 81-029

KEVIN D. YOUNG & a.

v.

ABALENE PEST CONTROL SERVICES, INC.

April 2, 1982

288

*Diversified Legal Services P.A.*, of Concord (*Mark Rufo* on the brief and orally), for the plaintiffs.

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Steven J. McAuliffe* on the brief and orally), for the defendant.

PER CURIAM. Before purchasing their home in Center Barnstead, New Hampshire, the plaintiffs hired Abalene Pest Control Services, Inc. (Abalene) to inspect the premises for insects. One of Abalene's employees inspected the house and issued a certificate stating that "there was no evidence of termite or other wood destroying infestations" in the property at the time of inspection. Relying on the defendant's certification, the Youngs bought the property. They moved into the house on June 15, 1978, and, three days later, observed evidence of insect infestation. One week later, the Barnstead building inspector confirmed that the house was infested with wood-destroying carpenter ants. He estimated that the "colony of ants had been nesting in . . . [the] home for several months." He noted that "Abalene Pest Control Services, Inc. made

an inspection on May 18, 1978, and gave a negative report even though there were . . . piles of sawdust in several areas."

After the plaintiffs discovered that their home was infested with carpenter ants, Nancy Young became extremely nervous and depressed and sought medical treatment. Her doctor prescribed tranquilizers. On July 29, 1978, the plaintiffs vacated their home, and, later that day, Nancy Young attempted to commit suicide by taking an overdose of tranquilizers.

The Youngs brought a three-count negligence action against Abalene in Merrimack County Superior Court in September 1979. Their first count may be interpreted as alleging both negligence and breach of contract. This appeal relates only to the second and third counts. In count 2, the plaintiffs alleged that Abalene was liable for Nancy Young's "extreme mental suffering and acute mental distress." In count 3, the Youngs sought damages for Kevin Young's loss of consortium. The Superior Court (*Dalianis*, J.) granted Abalane's motion to dismiss the second and third counts. The Youngs filed an interlocutory appeal from that ruling. We affirm the trial court.

■■ The plaintiffs' second and third counts, seeking recovery for mental distress and loss of consortium, were framed as negligence actions. Whether an action is "on a contract or in tort is not controlled by the form of the action but by its substance." *Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc.*, 110 N.H. 215, 217, 265 A.2d 5, 7 (1970); *see Guerin v. N.H. Catholic Charities*, 120 N.H. 501, 505, 418 A.2d 224, 227 (1980). In this case, the duty allegedly violated arose from a contractual obligation. *See Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc.*, 110 N.H. at 217, 265 A.2d at 8. The parties entered into a contract under which Abalene was to certify whether a house was free from insects. The defendant's performance was so grossly defective that it may have amounted to no performance at all. The "purpose of the contract duty is to secure the receipt of the thing bargained for . . . . " *Dunn & Sons, Inc. v. Paragon Homes of New Eng., Inc.*, 110 N.H. at 217, 265 A.2d at 8. The plaintiffs did not receive the "thing" for which they bargained. For the reasons which follow, the plaintiffs' damages are limited to those that "the defendant had reason to foresee as a probable result of its breach when the contract was made." *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 611, 392 A.2d 576, 579 (1978) (quoting *Emery v. Caledonia Sand & Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 932 (1977)); *see Zareas v. Smith*, 119 N.H. 534, 538, 404 A.2d 599, 601 (1979).

■■ Kevin Young claims that the trial court erred in dismiss-

ing his loss of consortium claim. We disagree. Either spouse is entitled to recover damages for loss of consortium, whether the loss is caused intentionally or negligently. RSA 507:8-a. Nothing in the record, however, indicates that Abalene either intentionally or negligently injured Nancy Young so as to impair her husband's right of consortium. His loss of consortium count, therefore, was properly dismissed.

■ The plaintiffs next assert that the trial court committed error when it dismissed Nancy Young's count that sought damages for negligent infliction of emotional distress. In *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 615, 392 A.2d at 581, this Court held that damages for mental distress "are not generally recoverabe in a contract action." Nancy Young, on the facts of this case, cannot recover damages for mental suffering and emotional distress, although the plaintiffs may recover consequential damages under count one if they succeed in proving breach of the contract. *See id.*, 392 A.2d at 582; *Zareas v. Smith*, 119 N.H. 534, 538, 404 A.2d 599, 601 (1979).

■ In this case, we hold that Nancy Young's alleged injuries were not foreseeable as a matter of law.

Accordingly, we remand for trial on count one.

*Affirmed and remanded.*

BATCHELDER, J., did not sit; DOUGLAS, J., dissented.

DOUGLAS, J., dissenting: Because the trial court granted Abalene's motion to dismiss, we must assume that all the facts pleaded by the plaintiffs are true, and construe all inferences from those facts favorably to the plaintiffs. *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 516, 431 A.2d 770, 773 (1981). "If the facts as alleged would constitute a basis for legal relief, the motion to dismiss should be denied." *Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. 649, 651, 392 A.2d 145, 146 (1978).

A defendant can be held liable for negligence only if he owes the plaintiff a duty to conform his conduct to a particular standard of care. *Libbey v. Hampton Water Works Co.*, 118 N.H. 500, 502, 389 A.2d 434, 435 (1978); *Cote v. Litawa*, 96 N.H. 174, 176–77, 71 A.2d 792, 794–95 (1950); *Chiuchiolo v. New England &c. Tailors*, 84 N.H. 329, 336–38, 150 A. 540, 544 (1930); *see Hurd v. Railroad*, 100 N.H. 404, 408, 129 A.2d 196, 200 (1957).

A duty is owed only to those who are foreseeably endangered by negligent conduct. *See* 2 F. HARPER & F. JAMES, THE LAW of

TORTS § 18.2, at 1018 (1956) [hereinafter cited as HARPER & JAMES]; Comment, *Duty, Foreseeability, and the Negligent Infliction of Mental Distress*, 33 MAINE L. REV. 303, 319 (1981). In negligent infliction of emotional distress cases, however, duty should involve more than foreseeability. A strict foreseeability approach forecloses inquiry into other important factors such as public policy, distribution of loss, the utility of the defendant's conduct, the cost to the defendant of doing business, and deterrence of future tortious conduct. *Id.* at 322.

Whether a defendant owed a duty to a plaintiff is sometimes treated as a question of law for the judge. 2 HARPER & JAMES, *supra* § 18.8, at 1058–59. If the elements establishing a duty are clear, then a court may decide the question as a matter of law. *Id.* at 1059; *cf. Cloutier v. The Great Atlantic & Pacific Tea Co., Inc.*, 121 N.H. 915, 924, 436 A.2d 1140, 1145 (1981). *But see Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 809, 395 A.2d 843, 847 (1978) ("A court will rarely be able to say as a matter of law that . . . the purpose or manner of its [a product's] use . . . was not foreseeable").

Unless the existence of a duty is so clear as to be established as a matter of law, however, it should be treated as a jury question because "[t]he duty issue frequently poses questions of the kind usually given to the jury." 2 HARPER & JAMES, *supra* § 18.8, at 1059. Like any other issue, the judge should leave the question of duty to the jury "if it is a debatable one." "*Id.* at 1060. *But see Libbey v. Hampton Water Works Co.*, 118 N.H. 500, 502, 389 A.2d 434, 435 (1978).

This court has recognized that the existence of a duty may be a question of fact for jury determination. *See Chiuchiolo v. New England &c. Tailors*, 84 N.H. at 331, 150 A. at 541 (whether an exploding gauge would frighten the plaintiff so as to cause her injury was considered a question of fact for the jury); *see Derosier v. Company*, 81 N.H. 451, 459, 130 A. 145, 150 (1925). Borderline cases should go to the jury because "it is deemed wise to obtain the judgment of the jury, reflecting as it does the earthy viewpoint of the common man—the prevalent sense of the community. . . ." *Marshall v. Nugent*, 222 F.2d 604, 611 (1st Cir. 1955). Our system of justice is based on the premise that *juries* are capable of determining difficult questions, *see State v. Elbert*, 121 N.H. 43, 44, 424 A.2d 1147, 1148 (1981), and their function should not be usurped unnecessarily.

In this case, the trial court granted the defendant's motion to dismiss Nancy Young's claim for negligent infliction of emotional distress. Dismissing Nancy Young's claim would have been proper

had the facts clearly indicated that Abalene had *no* duty to the Youngs as a matter of law, that is, that the type of injury that Nancy Young suffered was not foreseeable, and that Abalene should not bear financial responsibility for public policy reasons. *See generally* Prosser, *Palsgraf Revisited*, 52 MICH. L. REV. 1, 15 (1953). The facts of this case, however, present the type of "doubtful situation" in which the "jury must say where the line is to be drawn." *Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y. 47, 54, 120 N.E. 86, 88 (1918); *see Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 809, 395 A.2d at 847. Duty, as complex a concept as it is, may be established or not established as a matter of law, *see* 2 HARPER & JAMES, *supra* § 18.8, at 1058–59, but in this case, duty cannot be established as a matter of law.

A home assumes an important role in people's lives, and a reasonable person could find that its loss might cause severe depression. This court has repeatedly recognized the tremendous significance of the home, and protected individuals' interests in their homes. In *Gazzola v. Clements*, 120 N.H. 25, 30, 411 A.2d 147, 151–52 (1980), we held that "the right to one's family home" was a fundamental personal right under the New Hampshire Constitution. This court has also recognized that the only real asset most couples ever have is their home. *See Hanson v. Hanson*, 121 N.H. 719, 720, 433 A.2d 1310, 1311 (1981). Like a car, it is a major investment that is made with great care and deliberation. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 89, 370 A.2d 270, 273 (1977). In short, purchasing a home is a significant event, fraught with emotion and expectation, especially when it is a young couple's first home. To grant a motion to dismiss, a trial court must find that the plaintiff is not "entitled to recover upon any state of the facts findable under the pleadings." *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 610, 392 A.2d 576, 578 (1978). On the facts before us, I cannot say that the plaintiff was not entitled to recover. On the contrary, longstanding and undisturbed New Hampshire precedent supports the plaintiffs' claim.

In the "ordinary case," recovery is not available for mental disturbance. W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 54, 328–29 (4th ed. 1971). Two types of cases, however, break away from this settled rule. *Id.* at 329. A "respectable minority" of courts hold telegraph companies liable for the negligent transmission of messages, *id.*, and a majority allow recovery for the negligent mishandling of corpses. *Id.* at 329–30. As Prosser explains, these cases have one thing in common: the "likelihood of genuine and serious mental distress . . . which serves as a guarantee that the claim is not spurious." *Id.* at 330. When this guarantee can be found, and

the mental distress is real and serious, there is no reason to deny recovery. *Id.* This court has continually rejected the general rule disallowing recovery for mental disturbance alone and has followed the fairer approach enunciated by Prosser that allows recovery for genuine, serious mental anguish. *See id.; Chiuchiolo v. New England &c. Tailors*, 84 N.H. 329, 150 A. 540 (1930); *Walker v. Railroad*, 71 N.H. 271, 51 A. 918 (1902).

Negligently inflicted emotional distress has been compensable in this State since 1902. In *Walker v. Railroad*, 71 N.H. 271, 51 A. 918 (1902), this court upheld a verdict for a plaintiff who "claimed that she was injured by the sudden starting of the train on which she was a passenger, as she was leaving a car." *Id.*, 51 A. at 918. Her injury consisted of "partial mental disability" and fear that she might become insane because of the incident. *Id.* at 272, 51 A. at 919. The court correctly instructed the jury that the defendant, if liable, was responsible for the "direct, natural, and probable result of the defendant['s] fault." *Id.* at 273, 51 A. at 919. If the plaintiff's apprehension of insanity resulted from the defendant's negligence, then "such suffering was an element of her damages." *Id.*, 51 A. at 919. The facts of this 1902 case are indistinguishable from the case at hand.

As in *Walker*, the tort in this case arose out of a contractual relationship. The relationship between a carrier and a passenger is one of express or implied contract. 14 AM. JUR. 2d, *Carriers* § 739, at 221 (1964). "Undoubtedly the relation between the passenger and carrier is contractual, both in origin and nature; yet the act that breaks the contract may also be a tort, just as a carrier's unexcused failure to deliver goods intrusted to him is at once a breach and a [tortious] conversion." *Austro-American S.S. Co. v. Thomas*, 248 F. 231, 233 (2d Cir. 1917). Eighty years ago this court permitted the plaintiff a cause of action for negligently inflicted emotional distress. I see no reason why that precedent does not control the instant case. The majority chooses not to deal with *Walker* but that does not make it disappear.

This court fifty-two years ago allowed a plaintiff to recover for injuries to her health resulting from severe fright caused by the sudden, terrifying noise of an exploding boiler gauge. *See Chiuchiolo v. New England &c. Tailors*, 84 N.H. 329, 150 A. 540 (1930). The argument that the consequences of fright were too remote from the negligent act to be caused by it was *rejected. Id.* at 333, 150 A. at 543. We, likewise, should reject the defendant's "remoteness" argument here because "[t]he question of remoteness . . . may be, and usually is, one of fact. . . ." *Chiuchiolo v. New England &c. Tailors*, 84 N.H. at 334, 150 A. at 543; *see Derosier v. Company*, 81

N.H. at 462, 130 A. at 152 (1925) (question of whether the defendant's negligence caused the plaintiff's injury "is essentially one of fact").

The limitations on recovery for mental distress are set out in *Corso v. Merrill*, 119 N.H. 647, 658–59, 406 A.2d 300, 308 (1979). Emotional distress must be accompanied by physical consequences proved through the testimony of medical witnesses. *Id.* at 658, 406 A.2d at 307. In *Corso*, we allowed the plaintiffs, who alleged they suffered depression, "to prove through the testimony of medical witnesses that their psychic injury was susceptible to objective medical determination." *Id.*, 406 A.2d at 307. Such testimony would verify the genuineness of the plaintiffs' emotional distress claim in this case and eliminate it entirely if such testimony were not forthcoming.

I am unable to say that, as a matter of law, severe emotional distress could not have been caused by the defendant's actions. *See Chiuchiolo v. New England &c. Tailors*, 84 N.H. 329, 150 A. 540 (1930); *Walker v. Railroad*, 71 N.H. 271, 51 A. 918 (1902). I therefore conclude that the trial court erred in granting the defendant's motion to dismiss.

Finally, with regard to the husband's loss of consortium claim, the record shows that Nancy Young suffered extreme nervousness when she learned about the carpenter ant infestation. She was so disturbed about losing her new home that she attempted suicide on the day the Youngs moved out. Under RSA 507:8-a, "either a wife or husband is entitled to recover damages for loss or impairment of right of consortium whether caused intentionally or by negligent interference." Consortium has been defined as "reciprocal rights inherent in the marital relationship of husband and wife, including such undefined elements as comfort, companionship, and commitment to the needs of each other. . . . It embraces love, companionship, affection, society, sexual relations, services [and] solace." *LaBonte v. Nat'l Gypsum Co.*, 110 N.H. 314, 318, 269 A.2d 634, 637 (1970) (citations omitted.) Assuming that all the facts pleaded by the plaintiffs are true, *see Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. at 516, 431 A.2d at 773, I conclude that Abalene's motion to dismiss the third count was erroneously granted because Kevin Young's "allegations are reasonably susceptible of a construction that would permit recovery." *See Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. at 651, 392 A.2d at 146.