Rockingham
No. 80-503

SALEM ENGINEERING AND CONSTRUCTION CORPORATION

v.

LONDONDERRY SCHOOL DISTRICT

May 12, 1982

*James A. Connor*, of Manchester, by brief and orally, for the plaintiff.

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Barbara F. Loughman* on the brief and orally), for the defendant.

BOIS, J. This is an action for breach of a building construction contract. The Trial Court (*Wyman*, J.) approved a Master's (*Mayland H. Morse, Jr.*, Esq.) report which found the defendant, Londonderry School District, liable to the plaintiff, Salem Engineering and Construction Corporation in the amount of $275,000 for direct and consequential damages resulting from the defendant's failure to pay the balance due under its contract. We affirm the award of direct damages but reverse the award of consequential damages.

In February 1977, the plaintiff construction company entered into a standard American Institute of Architects contract with the defendant school district. According to the terms of the contract, the plaintiff was to construct an addition to the Londonderry High School for the sum of $2,530,500. The contract required the plaintiff to complete the construction substantially by June 1, 1978, and the conditions of the contract provided that "[a]ll time limits . . . are of the essence. . . . "

Numerous delays occurred during the course of the construction. At the start of the construction, the plaintiff encountered unexpected ground conditions which impeded the progress of the work. Further delay resulted from the issuance of several change orders and from the tardy delivery of heating, ventilating, and air conditioning (HVAC) units. Although certain HVAC units arrived at the construction site in February 1978, the plaintiff intended to install the units at a later date and sent them to Lawrence, Massachusetts for storage. Shortly thereafter, a truck carrying the HVAC units from Lawrence back to the construction site crashed into a highway overpass, destroying three of the units. Replacement units did not arrive until June 27, 1978. Finally, additional delay resulted when a dispute arose concerning the electrical subcontractor's responsibility for the HVAC wiring. As a consequence of these events, the plaintiff failed to complete the project by the June 1, 1978 deadline, and the work continued through the summer of 1978.

After the June 1, 1978 deadline had passed, the electrical subcontractor became embroiled in a second dispute with the plaintiff.

The subcontractor alleged that it had not received payments from the plaintiff for several months. Thus, on June 9, 1978, the electrical subcontractor walked off the job. Six days later, the subcontractor returned to work when the defendant, over the plaintiff's protests, began to issue joint checks payable to the subcontractor, its bonding company, and the plaintiff.

In view of the delays in the construction work, school officials believed that the building would not be ready for occupancy on September 8, 1978, the date originally planned for the opening of school. Consequently, on August 26, 1978, they decided to postpone the opening of school until September 18. Although various work continued through December of 1978, a certificate of substantial completion was issued on September 5, 1978.

The defendant seasonably paid the plaintiff $2,418,363 of the aggregate contract sum, which had increased to $2,597,963 as a result of the incorporation of several change orders into the original contract. In November of 1978, the plaintiff requisitioned payment of the remaining $179,600 of the contract price. The defendant, however, claimed that it had incurred damages from the late opening of school and from defects in the construction work, and refused to pay the requested sum.

During the fall of 1978, the financial condition of the plaintiff company deteriorated. According to the master's findings, the New England Merchants Bank discontinued the plaintiff's $250,000 line of credit in December 1978. The bank applied approximately $221,000 from the plaintiff's bank accounts, against the plaintiff's outstanding loans. This action resulted in the nonpayment of numerous payroll checks which the plaintiff had written earlier against the depleted accounts. The termination of the plaintiff's line of credit virtually destroyed its ability to obtain bonding for future construction projects.

The plaintiff brought suit against the defendant, claiming that the defendant had wrongfully withheld the balance due under the contract, and that this action proximately caused the loss of its line of bank credit and its ability to obtain bonding. The defendant denied these allegations and sought to set off against its remaining obligation various damages, including losses allegedly resulting from the delay in the opening of school.

The master found that the defendant had improperly issued the joint checks, and that the plaintiff was chargeable neither for failing to comply with the June 1 deadline, nor for the delay caused by the destruction of the HVAC units. The master ruled that the defendant's retention of funds constituted a breach of the contract

and that the plaintiff was entitled to recover the amount withheld. Although he specifically found that the defendant's actions had not caused the loss of the plaintiff's line of credit, the master awarded the plaintiff $100,000 as consequential damages for harm to its professional reputation and for deterioration in its ability to maintain "a going concern status." The master found that the opening of school could have occurred on schedule, and that the defendant had acted unreasonably in delaying the opening. He attributed the late opening solely to the defendant's actions, and rejected its claims for set-off.

The superior court entered a decree in accordance with the master's report. The court denied the defendant's motion to set aside the verdict, and the defendant brought this appeal.

The defendant first challenges the master's award of consequential damages. The defendant argues that the award of consequential damages was invalid because the proper measure of damages for breach of a contract to pay money is the contract price plus interest. In the alternative, the defendant argues that even if the consequential damages were permissible, the plaintiff was not entitled to these damages because they were not reasonably foreseeable at the time of the contract.

 Until recently, the only damages available for breach of a contract to pay money were the amount due plus interest. *See Smith v. Wetherell*, 89 N.H. 106, 108, 193 A. 216, 218, *aff'd on rehearing*, 89 N.H. 110, 112, 194 A. 129, 130 (1937). In *Lawton v. Great Southwest Fire Insurance Company*, 118 N.H. 607, 392 A.2d 576 (1978), this court departed from the traditional rule. We stated that the reasons for the traditional rule—the aggrieved party's ready access to replacement funds in the market, and the desirability for ease and certainty in the ascertainment of damages— were unconvincing in regard to damages for breach of an insurance contract. *Id.* at 610–11, 392 A.2d at 579. We find these reasons equally unconvincing in cases, outside of the insurance context, which involve breach of a contract to pay money. In rejecting the defendant's argument that consequential damages are never appropriate in actions for breach of a contract to pay money, we hold that consequential damages are permissible in such actions if the damages satisfy the customary legal requirements for their imposition.

 Under the requirements of our law, consequential damages are warranted only when they are reasonably foreseeable at the time of the contract. *Petrie-Clemons v. Butterfield*, 122 N.H.

120, 124, 441 A.2d 1167, 1170 (1982); *see Martin v. Phillips*, 122 N.H. 34, 37, 440 A.2d 1124, 1125–26 (1982). In order for a party to recover consequential damages, his injury must follow the breach in the natural course of events, or the evidence must specifically show that the breaching party had reason to foresee the injury. *Petrie-Clemons v. Butterfield*, 122 N.H. at 124, 441 A.2d at 1170; *Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 932 (1977). We have held that the scope of foreseeability with respect to damages is narrower in contract cases than in tort cases. *Zareas v. Smith*, 119 N.H. 534, 538, 404 A.2d 599, 601 (1979).

▊ In the instant case, we find that the consequential damages which the master awarded were not reasonably foreseeable at the time of the parties' contract. Although the plaintiff corporation had suffered some operating losses between 1975 and 1978, the corporation appeared, to the public and to the defendant, to have enjoyed substantial success when the parties entered into the contract in February 1977. The president of the corporation testified that in 1977 and 1978 his company employed forty to fifty individuals, and had obtained projects worth more than five million dollars. This sum represented the greatest volume of work that the corporation had had at one time. The master found that in 1977 the corporation had a line of unsecured credit of $250,000, and that the value of its business was approximately three million dollars. Certainly, in light of these facts, a deterioration in the plaintiff's reputation or ability to conduct its business was not a reasonably foreseeable result of the defendant's retention of the disputed $179,600, which constituted only one-fourteenth of the total contract price. Furthermore, no evidence existed showing that the defendant foresaw or had reason to foresee the plaintiff's subsequent damages. *See generally Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 612, 392 A.2d at 579–80.

▊ In addition to holding the consequential damages unforeseeable, we have serious doubts whether the evidence supported a finding that the defendant's conduct proximately caused such damages. *Cf. Zareas v. Smith*, 119 N.H. at 540, 404 A.2d at 602–03. The record indicated that the plaintiff had begun to experience internal financial difficulties prior to the defendant's retention of the balance due on the contract. The master specifically found that the plaintiff had incurred operating losses and had made overdrafts on its account as early as December 1977. Thus, as a result of the unforeseeability of the resulting harm to the plaintiff, and

the uncertain causal relationship between the defendant's acts and the plaintiff's injuries, we hold that the master's award of consequential damages was improper and constituted reversible error.

The defendant also challenges the master's refusal to grant its claims for set-offs. The defendant argues that the evidence did not support the master's finding that the school board could have opened the building on schedule.

■■ We will uphold a master's findings and rulings unless they are unsupported by the evidence or are erroneous as a matter of law. *Gauthier v. Robinson*, 122 N.H. 365, 369, 444 A.2d 564, 566 (1982); *Campo v. Maloney*, 122 N.H. 162, 168, 442 A.2d 997, 1001 (1982). We will not usurp the master's function as fact-finder. *Gauthier v. Robinson*, 122 N.H. at 369, 444 A.2d at 566.

■ At the trial of the instant case, the local building inspector testified that the plaintiff had substantially completed the construction by the first week of September 1978. He stated that the building was structurally sound and ready for occupancy at that time. Furthermore, an architect on the project testified that the school could have been occupied for its intended purposes on September 5, 1978. We hold that this evidence sufficiently supported the master's finding that the school district could have opened the building on September 8, as it had originally planned.

The defendant makes several additional arguments regarding the propriety of the master's findings and rulings with respect to its claims for set-offs. Because we uphold the master's implicit ruling that the defendant's damages were not caused by the plaintiff's late performance, we find that it is unnecessary to discuss the defendant's remaining arguments.

*Affirmed in part and reversed in part.*

All concurred.