Hillsborough
No. 80-451
No. 81-048

GENEVIEVE D. JARVIS & a.

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA

July 14, 1982

*Brown & Nixon P.A.*, of Manchester (*David L. Nixon* and *Mark A. Abramson* on the brief, and *Mr. Abramson* orally), for the plaintiffs.

*Sulloway, Hollis & Soden*, of Concord, and *Stark & Peltonen*, of Manchester (*John W. Mitchell* and *Rodney L. Stark* on the brief, and *Mr. Mitchell* orally), for the defendant.

BROCK, J.   In this case, the plaintiffs, Genevieve D. Jarvis and John P. Jarvis, seek damages from the defendant insurance carrier for its refusal to pay and alleged bad-faith denial of health insurance benefits. The action arose when the defendant denied the plaintiffs' claim for reimbursement of certain medical expenses, claiming that the expenses were not covered by the health insurance policy. The plaintiffs' writ, as amended, includes counts in both contract and tort, seeking a full range of consequential and punitive damages, including an award for emotional distress. The defendant moved to dismiss all counts, except the one alleging simple breach of contract, for failure to state a cause of action. The Trial Court (*Flynn*, J.), pursuant to RSA 491:17, transferred, without ruling, the following question to this court.

> "Do the plaintiffs have a cause of action against the insurance carrier for those counts contained in plaintiffs' motion to amend, dated December 18, 1980?"

The plaintiffs also argue that the superior court erred in denying their motions to produce all the defendant's advertisements for the five years preceding this action and to reveal pending lawsuits against the defendant.

We hold that the plaintiffs have no cause of action in tort. Depending upon the outcome of a petition for declaratory judgment still pending in the superior court, however, they may have a cause of action for bad-faith breach of contract, enabling them to recover damages *ex contractu.* Further, we affirm the trial court's denial of the plaintiffs' motion for discovery.

The plaintiff, John P. Jarvis, is seventy-two years old and suffers from cerebral arteriosclerosis, a condition that results in deterioration of the thought processes and causes mental aberration, agitation and combativeness. In late 1979, he was hospitalized due to aggravated mental confusion, hallucinations, and psychotic agitation. At that time, he required twenty-four-hour nursing care, including restraint and constant supervision because of his violent

and self-destructive behavior. Although his condition remained unimproved, he was discharged from the hospital on October 29, 1979. His physician conditioned his release upon continuation of twenty-four-hour nursing care and the presence of a male nurse during Mr. Jarvis' waking hours. Because no male nursing personnel were available in the Manchester area, it was necessary that a male licensed certified aid (L.C.A.) be employed instead.

Mrs. Jarvis immediately contacted the defendant's agent to inform him about the unavailability of male nurses in Manchester and requested his permission to employ a male L.C.A. The agent agreed to the alternative, and the insurance company assumed responsibility for payment of all medical services to Mr. Jarvis. In January 1980, however, it notified the plaintiff that the insurance policy did not cover the services of L.C.A.s. Thereupon, the defendant stopped all further reimbursements of medical expenses to the plaintiffs. In March 1980, it agreed to reimburse the plaintiffs for medical expenses they had incurred during January through March for one eight-hour shift of nursing services per day and to resume payments to the plaintiffs on that basis.

In their original writ, the plaintiffs alleged that, when the defendant refused to reimburse them for the cost of medically necessary services by a male L.C.A., the defendant wrongfully denied them insurance benefits to which they were entitled under their health insurance policy. Because they believed that the insurance company had, in bad faith, denied them insurance benefits to which they were clearly entitled, in total disregard of information readily available to it, the plaintiffs subsequently decided to amend their pleadings, by adding several counts in tort, as well as an additional count in contract. Total damages claimed are $1,000,000 for each plaintiff.

■■ In determining whether the defendant's motion to dismiss the various counts should be granted, all facts properly pleaded are assumed to be true, and the reasonable inferences therefrom are construed most favorably to the plaintiffs. *See Morgenroth & Assoc.'s Inc. v. Town of Tilton*, 121 N.H. 511, 516, 431 A.2d 770, 773 (1981). If the plaintiffs could recover upon any set of the facts under the pleadings, the motion to dismiss should be denied. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 610, 392 A.2d 576, 578 (1978).

We first consider the plaintiffs' counts sounding in tort. In count I of their amended writ, the plaintiffs allege that the defendant, by refusing to reimburse them for medically required services, in total disregard of the medical information available to it, not only

breached its contractual obligation of good faith and fair dealing, but also breached an independent duty to deal fairly with them.

■ This court recently rejected the argument that an insurer has an independent duty to deal fairly with its insured and held that an insurer's wrongful or bad-faith refusal to settle or pay a claim pursuant to its contractual obligations did not give rise to a cause of action in tort. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 613–14, 392 A.2d at 580. The relationship of the parties in the present case is the same as that in *Lawton*, and the facts alleged in both cases are sufficiently similar that the cases are indistinguishable as a matter of law on this issue. We decline the plaintiffs' request that we overrule *Lawton*, and we conclude that upon remand the defendant's motion to dismiss count I should be granted.

The plaintiffs' second claim in tort, set forth in count III of the amended writ, alleges that the defendant intentionally inflicted mental distress on Mrs. Jarvis by its "outrageous conduct" in denying the disputed insurance benefits.

■ Assuming *arguendo* that this court, in an appropriate case, would recognize the tort of intentional infliction of mental distress, this is not such a case. *See generally, Tafro, Insurer's Bad Faith Refusal to Pay First Party Insurance Claims: New Hampshire's Remedy Under Lawton v. Great Southwest Fire Insurance Company*, 20 N.H.B.J. 187, 201–02 (1979). Our review of the factual allegations before us convinces us that the defendant's conduct would, as matter of law, fail to meet the definition of "outrageous conduct" set forth in the Restatement of Torts. RESTATEMENT (SECOND) OF TORTS § 46, at 72–73 (1965). Therefore, upon remand, count III should also be dismissed.

In count IV of the amended writ, Mrs. Jarvis seeks recovery for the negligent infliction of emotional distress. She claims that the defendant's refusal to pay for home-nursing services by an L.P.A. resulted in a horrifying emotional experience for her, as she watched her husband deteriorate in helpless agitation and combativeness.

■ In support of this argument, she relies upon the *Corso* case, in which this court recently recognized the right of parents to recover damages for the emotional distress resulting from their contemporaneous perception of a serious accident in which their child was injured. *Corso v. Merrill*, 119 N.H. 647, 657, 406 A.2d 300, 307 (1979). We do not find sufficient similarity between the two cases to apply the *Corso* holding to this case. The instant case concerns an allegation of denial of insurance coverage rather than

an allegation of infliction of serious physical injury upon Mr. Jarvis which Mrs. Jarvis could have contemporaneously perceived. *See id.* at 653, 406 A.2d at 307. The plaintiffs' reliance upon *Corso* is misplaced and, therefore, upon remand, count IV should be dismissed.

▮▮ The plaintiffs' last count in tort (count V) alleges that the defendant defrauded the plaintiffs by inducing them to enter into and maintain the health insurance contract by representations and promises which the defendant knew to be false and never intended to fulfill. It is well settled in this State that a writ alleging fraud must specify the essential details of the fraud. *See Massachusetts Bonding Co. v. Keefe*, 100 N.H. 361, 363, 127 A.2d 266, 268 (1956); *see also Studwell v. Travelers Ins. Co.*, 121 N.H. 1090, 1091, 438 A.2d 942, 943 (1981). Because the plaintiffs do no more than state the general common-law definition of fraud, without making any specific allegations of fact concerning the defendant's fraudulent actions, their allegation of fraud lacks sufficient factual grounds to support their theory. Accordingly, we hold that count V should be dismissed unless it is amended to be more specific.

We next address the plaintiffs' count in contract. Count II of the amended writ alleges that the failure of the defendant to pay certain disputed insurance benefits constituted a bad-faith breach of contract, which entitled them to consequential and punitive damages, including damages for emotional distress.

▮ The underlying factor in determining whether there has been a bad-faith breach of contract is whether the terms of the insurance policy cover the services of an L.P.A. A petition for declaratory judgment is pending in the superior court to determine this question. If it is determined in the declaratory judgment action that the plaintiffs' policy did cover the services of an L.P.A., the plaintiffs will then, and only then, be able to assert their claim that the defendant's denial of benefits was in bad faith.

▮▮ We will now address what type of damages the plaintiffs can recover if they prove a bad-faith breach of contract by the defendant. We held in *Lawton* that where there has been a bad-faith breach of an insurance contract, the damages recoverable are not limited to the policy limits plus interest. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 611, 392 A.2d at 579. The insured may recover specific consequential damages if he can prove that such damages were reasonably foreseeable by the insurance company and that he could not have reasonably avoided or mitigated such damages. *Id.* at 611, 392 A.2d at 579 (citing *Emery v. Caledonia*

*Sand & Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 932 (1977)); *see Salem Engineering and Construction Corporation v. Londonderry School District*, 122 N.H. 379, 445 A.2d 1091 (1982). Recovery of damages for mental suffering and emotional distress that may accompany the economic damage is not, however, permitted in contract actions, such as the present one. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 615, 392 A.2d at 581; *Young v. Abalene Pest Control Services, Inc.*, 122 N.H. 287, 290, 444 A.2d 514, 516 (1982).

██ ██ Whether the defendant's refusal to pay benefits or settle a claim was in bad faith, whether the financial damages alleged to have resulted from the refusal to reimburse were foreseeable, and whether these damages could have been avoided with reasonable efforts by the insured, are all questions for the jury. *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. at 612–13, 392 A.2d at 580. In the present case, the trial court should await the decision on the defendant's petition for declaratory judgment. If it is determined that the policy did not cover the disputed services, the trial court should grant the motion to dismiss. If it is determined otherwise, the contract action in count II should proceed to trial for findings consistent with this opinion.

Finally, the plaintiffs request the reversal of the trial court's denial of their motion for discovery with respect to the defendant's advertising materials and information regarding other pending lawsuits against the defendant.

██ Although discovery is a proper procedural aid for the parties to prepare a case in advance of trial and must be given a broad and liberal interpretation, *McDuffey v. Boston & Maine RR.*, 102 N.H. 179, 181, 152 A.2d 606, 608 (1959), it is subject to limitations, mainly for the protection of the parties against harassment. *Riddle Spring Realty Co. v. State*, 107 N.H. 271, 278, 220 A.2d 751, 758 (1966). Those limitations may be imposed by the trial court in the exercise of its discretion. *Scontsas v. Citizens Insurance Co.*, 109 N.H. 386, 388, 253 A.2d 831, 833 (1969).

██ Superior Court Rule 35 b(1) states that a party may discover any unprivileged matter which is relevant to the pending action. In the present case, the trial court has determined that production of all advertisements used by the defendant for the five years preceding this action and revelation of all law suits pending against the defendant were not reasonable because such information was not relevant to this action. On the record, we cannot say that the trial court abused its discretion in refusing to order production

of that information. Accordingly, we uphold the trial court's decision. *Guri v. Guri*, 122 N.H. 552, 556, 448 A.2d 370, 372 (1982).

*Remanded.*

KING, C.J., and BOIS, J., did not sit; DOUGLAS, J., dissented in part; BATCHELDER, J., concurred.

DOUGLAS, J., dissenting: I do not differ with the majority's analyses of the intentional infliction of emotional distress, fraud, and breach of contract counts. I do, however, disagree with the majority's decision to dismiss the counts alleging that the defendant negligently inflicted emotional distress and refused in bad faith to pay or settle the Jarvis' claim.

John Jarvis, who is seventy-two years old, suffers confusion, agitation, combativeness, hallucinations, and paranoid delusions due to an organic brain disease. He was hospitalized in the fall of 1979 and required constant supervision and nursing care. Registered nurses cared for Mr. Jarvis during the day and evening, and certified aides tended to his needs at night. The defendant provided coverage for all this special nursing care, including the services performed by certified aides. Mr. Jarvis was released from the hospital in October 1979, on the condition that twenty-four-hour nursing care continue and that a male nurse attend Mr. Jarvis during the daytime. Neither the hospital nor the leading commercial home nursing service providers in Manchester could locate a male registered nurse (RN) or licensed practical aide (LPN). Plough, Inc., which was authorized to approve and disapprove claims on behalf of the defendant, permitted the plaintiffs to employ a certified male aide. In November, the defendant reimbursed Mrs. Jarvis for the first five days of home-nursing care provided by a certified male aide, RNs, and LPNs. On January 2, 1980, however, the defendant notified Mrs. Jarvis that it would not reimburse her for services provided by certified medical attendants, although she was reimbursed for services provided by RNs. Payment soon stopped altogether because the plaintiffs' policy only covered "[p]rivate duty professional nursing services by a registered graduate nurse. . . ." Two months later, the defendant agreed to reimburse the plaintiffs for one shift per day since the preceding January.

In refusing to reimburse the plaintiffs for the services of a licensed certified aide, the defendant callously ignored the fact that an RN or LPN was simply unavailable and that a male attendant was essential to both Mr. and Mrs. Jarvis' wellbeing. When the defendant cut back its medical coverage, Mrs. Jarvis was forced to

exhaust the plaintiffs' resources. She spent all their savings, borrowed $12,000 from her relatives, sold the family car, and sold stock at a loss. She eventually had to place her husband in a nursing home. Mrs. Jarvis says that the defendant's refusal to pay for home-nursing services which had been certified as medically necessary resulted in a horrifying emotional experience. Because of her age and her own ill health, Mrs. Jarvis was physically and emotionally unprepared for the burden of keeping her husband alive without the full-time services of nursing personnel. As she watched her husband deteriorate, Mrs. Jarvis suffered nervousness, anxiety, fatigue and trauma. It was a painful experience, with lasting effects.

The majority disposes of the plaintiffs' negligent infliction of emotional distress claims by distinguishing the circumstances of this case from those present in *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979), in which we allowed parental bystanders to recover mental distress damages. Nothing in *Corso* indicates that this court intended to confine negligent infliction of emotional distress recovery to the limited facts of that case. To the contrary, negligently inflicted emotional distress has been compensable in this State in other contexts since 1902. *See Chiuchiolo v. New England &c. Tailors*, 84 N.H. 329, 150 A. 540 (1930); *see Walker v. Railroad*, 71 N.H. 271, 271, 51 A. 918, 918 (1902); *see also Young v. Abalene*, 122 N.H. 287, 290, 444 A.2d 514, 517 (1982) (Douglas, J., dissenting). I see no reason to deny recovery when a plaintiff suffers genuine, serious mental anguish. *See* W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 54, at 330 (4th ed. 1971).

I am particularly troubled by the majority's decision because of the procedural posture of this case: it is before us on the defendant's motion to dismiss. By dismissing the plaintiffs' negligent infliction claim, the court holds that the plaintiffs are not entitled to recover on any state of the facts findable under the pleadings. The facts do not warrant such a conclusion.

The plaintiffs should be given an opportunity to prove their negligent infliction of emotional distress claim. The defendant can be held liable for negligence only if he owes the plaintiff a duty to conform its conduct to a particular standard of care. *Young v. Abalene*, 122 N.H. 287, 289, 444 A.2d 514, 517 (1982) (Douglas, J., dissenting); *Libbey v. Hampton Water Works Co.*, 118 N.H. 500, 502, 389 A.2d 434, 435 (1978); *Cote v. Litawa*, 96 N.H. 174, 176–77, 71 A.2d 792, 794–95 (1950). The issue in this negligent infliction claim, therefore, is whether the defendant owed the Jarvis' a duty. Unlike the majority, I cannot say as a matter of law that no duty was owed. Even if the defendant did not breach its insurance contract, an issue

which is not before this court, the mere *manner* in which the defendant terminated benefits for Mr. Jarvis' certified aide and eliminated all but one shift of nursing services could constitute actionable negligence and prevent dismissal of the plaintiffs' negligent infliction of emotional distress claim. *See Muniz v. United Hospitals*, 153 N.J. Super. 79, 79, 379 A.2d 57, 57 (App. Div. 1977). It is wrong for this court to hold as a matter of law that the defendant had no duty to the Jarvis' and that they could recover under no circumstances.

I also disagree with the majority's decision to adhere to *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 614, 392 A.2d 576, 581 (1978) and not recognize a cause of action in tort for wrongful or bad-faith refusal claims. In *Lawton*, this court held that an insurer's bad-faith refusal to pay a first-party claim did not constitute a tort. *Id.*, 392 A.2d at 581; *see* Tafro, *Insurers' Bad Faith Refusal to Pay First Party Insurance Claims: New Hampshire's Remedy Under Lawton v. Great Southwest Fire Insurance Company*, 20 N.H.B.J. 187, 192 (1979). *Lawton* dealt with fire insurance on commercial property; this case concerns insurance for medically necessary health care.

Because I believe that an insurer's responsibilities are greater in the area of health insurance, I would distinguish *Lawton* and recognize the separate tort of bad-faith refusal to pay a first-party claim when an insurer wrongfully delays paying, or completely refuses to pay, a first-party *health insurance* claim.

The court in *Lawton* refused to hold the insurer liable in tort partly because in the first-party claim situation, the insurer does not have a "special relationship" with the insured which would warrant imposition of an "independent legal duty to deal fairly with the insured." *Id.* at 613–14, 392 A.2d at 580–81. In the health insurance context, a "special relationship" *does* exist.

When an insured purchases health insurance, he seeks peace of mind and security in the event of sickness. As the California Supreme Court noted in the context of disability insurance, the insured

> "seeks protection against calamity. As insurers are well aware, the major motivation for obtaining disability insurance is to provide funds during periods when the ordinary source of the insured's income—his earnings— has stopped. The purchase of such insurance provides peace of mind and security in the event the insured is unable to work."

*Egan v. Mutual of Omaha Ins. Co.*, 169 Cal. Rptr. 691, 695, 620 P.2d

141, 145 (1979); *see* Tafro, *id.*, at 195 (1979); Note, *Damages for Mental Suffering Caused by Insurers: Recent Developments in the Law of Tort and Contract*, 48 NOTRE DAME LAWYER 1301, 1309 (1973) (insured is contracting for "financial and emotional security in the event of loss.") Because health insurers hold themselves out as fiduciaries, *see Seamen's Direct Buying Serv. v. Standard Oil*, 181 Cal. Rptr. 126, 135 (1982), they have a special responsibility to deal fairly and in good faith with their insureds, who are insuring themselves to *protect against* mental distress. *See id.*

What, then, do these special responsibilities of good faith and fair dealing entail? They "encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary." *Id.* (citation omitted). They require an insurer to examine all circumstances which might support the insured's claim, and only deny payment after a thorough investigation of foundation for its denial. *See Egan v. Mutual of Omaha Ins. Co.*, 169 Cal. Rptr. at 696, 620 P.2d at 145–46. While the precise limits of this tort cannot yet be defined, liability might be found not only when an insurer breaches its express contract obligations but also when it fails to conduct a thorough investigation of the factors which support the insured's claim or of the reasons for its denial.

Because it cannot be concluded as a matter of law that the Jarvis' could never prevail on the facts they have pleaded, I dissent to the dismissal of their claim relating to the defendant's failure to deal fairly with them.