Coos
No. 83-161
Merrimack
No. 83-182

CITY OF BERLIN

v.

THE STATE OF NEW HAMPSHIRE & a.

ANDERSON–NICHOLS & COMPANY, INC.

v.

THE STATE OF NEW HAMPSHIRE & a.

April 2, 1984

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Stephen J. McAuliffe* and *Sarah H. Mulhern* on the brief, and *Mr. McAuliffe* orally), for Anderson-Nichols & Company, Inc.

*Cleveland, Waters & Bass*, of Concord (*Michael C. Moyers* on the brief, and *Deborah A. Monteith*, of Hartford, Connecticut, orally), for the City of Berlin.

*Gregory H. Smith*, attorney general (*Edward L. Cross, Jr.*, assistant attorney general, on the brief and orally), for the State.

PER CURIAM. The plaintiffs, in separate actions consolidated on appeal, alleged that they either expressly or impliedly entered into a series of contracts with the State and that the State breached these contracts. The State in each case moved to dismiss the plaintiffs' claims for indemnity and breach of contracts as barred by sovereign immunity. The Trial Court (*Dunn*, J.) granted the motions to dismiss, and the plaintiffs appealed. We reverse in part and affirm in part.

The plaintiffs, Anderson-Nichols & Company, Inc. (ANCO) and the City of Berlin (city), allege that in 1970, 1974, and 1976 they executed contracts with the State through the Water Supply and

Pollution Control Commission (WSPCC). These contracts involve the planning and construction of a sewerage treatment facility. The contracts call for the federal government to provide seventy-five percent of the funding, the State to provide twenty percent and the city five percent. The plaintiffs contend that when the WSPCC signed these contracts and assumed certain contractual duties, the WSPCC either expressly or impliedly entered into binding contracts. They further allege that under these contracts the State is liable for twenty percent of the *entire* cost of the project, not just twenty percent of the exact dollar amount specified in the contract. In addition, the plaintiffs contend that the State is liable in equity and law for its breaches of these contracts.

■■ "In evaluating the propriety of the trial court's action [in granting a motion to dismiss], we must assume that all the facts alleged by the plaintiff are true and construe all reasonable inferences from those facts favorably to the plaintiff." *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 516, 431 A.2d 770, 773 (1981) (citing *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 610, 392 A.2d 576, 578 (1978)). "If the facts as alleged would constitute a basis for legal relief, the motion to dismiss should be denied." *Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. 649, 651, 392 A.2d 145, 146 (1978); *see also Jarvis v. Prudential Ins. Co.*, 122 N.H. 648, 651, 448 A.2d 407, 409 (1982). Accordingly, we must assume that the plaintiffs entered valid contracts with the State which the State has subsequently breached. Therefore, the decision of the trial court must be reversed unless the suits are barred by sovereign immunity.

The legislature has waived sovereign immunity in RSA 491:8 for "any express or implied contract with the State." The State, however, contends that the last sentence of RSA 149:4, XIII, revives sovereign immunity with respect to contracts entered into by the WSPCC, to the extent that twenty percent of the exact dollar amount specified in the contract is exceeded. Essentially, the State concedes that it is liable for the exact terms of the contract, but argues that sovereign immunity still precludes suits for breach of contract for damages in excess of those authorized by the exact amount specified in the contract. *See* RSA 149:4, XIII. For the reasons set forth below, we do not believe that the legislature intended to repeal the waiver of sovereign immunity in RSA 491:8 when it enacted RSA 149:4, XIII.

■ The last sentence of RSA 149:4, XIII, at issue provides: "Except for the financial assistance available to municipalities under the provisions of RSA 149-B, nothing herein shall be

construed to place any additional financial obligation on the state, the commission, or its personnel." We cannot say that the plain meaning of this language clearly conveys a legislative intent to repeal the waiver of sovereign immunity in RSA 491:8. The legislature is well aware of the importance of sovereign immunity and has evinced the ability clearly to waive or refuse to waive sovereign immunity. *See* RSA 99-D:1. ("It is not intended to . . . waive the sovereign immunity of the State . . . .")

■ Although RSA 99-D:1 was not enacted until 1978, the legislature was also informed and concerned about sovereign immunity in 1967, when RSA 149:4, XIII, was enacted. In 1967, the Senate had extended debates regarding sovereign immunity when considering a limited waiver of sovereign immunity from liability in tort for up to and including $1,000. *See* N.H.S. JOUR. 667–69, 694–95, 743–47 (1967). Senator Leonard even noted that Chief Justice Lampron "gave an opinion and said this law was antiquated." *Id.* at 744. This bill was eventually returned to committee for more study due to concern about the cost to the cities and towns if it was enacted. *Id.* at 747. Certainly, a senate this concerned with sovereign immunity would have been much more explicit if it had intended to repeal a waiver of sovereign immunity when it enacted RSA 149:4, XIII, in the same year.

■ A close reading of the applicable statutes convinces us that the legislature fully intended the State to pay its share of the *entire* cost of this project, not just the exact amount specified in the contracts. In RSA 149:4, XIII, the amount of money available to municipalities for these projects is controlled by the terms of RSA chapter 149-B: "Except for the financial assistance available to municipalities under the provision of RSA 149-B . . . ." RSA 149:4, XIII.

RSA 149-B:1 formerly provided:

> "The state of New Hampshire shall . . . pay annually 30 percent of the yearly amortization charges, meaning principal and interest, on the original costs resulting from the acquisition and construction of sewage disposal facilities by municipalities . . . in accordance with . . . RSA 149:4, XIII, for the control of water pollution. The word construction shall include engineering services . . . . The term 'original costs' as used herein shall mean the *entire* cost of the construction as defined in Public Law 660, 84th Congress . . . ."

(Emphasis added.) This statute has been amended several times since first enacted. In 1977 the amount of the State's participation

was reduced from thirty percent to twenty percent. *See* RSA 149-B:1 (Supp. 1983) (legislative history). In both 1979 and 1982, the statute was amended generally, and in 1983, several minor changes were made. *Id.*

It is significant that the legislature has not seen fit to alter any of the above-quoted language while otherwise amending the statute. RSA 149-B:1 (Supp. 1983) still includes engineering services and still provides that the State will be liable for the percentage of the "entire" cost as defined by federal law. Public Law 660 of the 84th Congress provided:

"As used in this section the term 'construction' includes preliminary planning to determine the economic and engineering feasibility of treatment works, the engineering, architectural, legal, fiscal, and economic investigations and studies, surveys, designs, plans, working drawings, specifications, procedures, and other action necessary to the construction of treatment works; and the erection, building, acquisition, alteration, remodeling, improvement, or extension of treatment works; and the inspection and supervision of the construction of treatment works."

Water Pollution Control Act Amendments of 1956, ch. 518, § 6(e), 70 Stat. 498, 503 (1956), *superseded by* Federal Water Pollution Control Act Amendments of 1972, Pub. L. No. 92–500, § 212(1), 86 Stat. 816, 844 (1972) (codified at 33 U.S.C.A. § 1292 (West (1978)).

It is apparent from this section that the federal government did not limit the meaning of the "entire cost of construction" to include merely the exact amount specified in the contracts. Rather, the language "alteration, remodeling, [or] improvement" used in the statute clearly indicates the government's contemplation of liability for expenses in excess of the exact dollar amount specified in the original contract before changes or add-ons.

 A legislature cannot intend two mutually exclusive results by the same statute. The clear meaning of RSA 149-B:1 (Supp. 1983) convinces us that the legislature thereby intended payment based on the *entire* cost of the project. The legislature cannot simultaneously have intended to repeal the waiver of sovereign immunity in RSA 491:8. Nothing in this opinion should be construed as permitting damages in excess of those authorized by the above-quoted federal statute.

On several occasions, this court has made statements and rulings concerning the State's liability when it enters into a contract. *See, e.g., Estate of Cargill v. City of Rochester*, 119 N.H. 661, 668, 406 A.2d 704, 708 (1979) ("RSA 491:8 (State, contracts, no limit)"). In

*Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 518, 431 A.2d 770, 774 (1981) we held that RSA 149:4, XIII was merely permissive and, therefore, that RSA 491:8 permitted a suit against the State based on an implied-in-fact contract.

■ If the legislature was dissatisfied with this interpretation of RSA 149:4, XIII or it wanted to limit the State's liability under RSA 491:8, it has had ample opportunity to do so. Since *Morgenroth & Assoc's, Inc. v. Town of Tilton supra* was decided in 1981, the legislature has amended RSA 149-B:1 twice. *See* RSA 149-B:1 (Supp. 1983) (legislative history). The legislature has not seen fit to alter RSA 149:4, XIII, or RSA 491:8, and we will not do so now.

■ To the extent that any of the plaintiffs' claims sound in indemnity and are implied in law, the trial court properly ruled that they are barred by sovereign immunity. *See Morgenroth & Assoc's, Inc. v. Town of Tilton, supra* at 516, 431 A.2d at 773 ("the superior court has authority under RSA 491:8 to hear only those claims against the State based on implied in fact contracts . . .").

We note that nothing in this opinion should be construed to mean that the State has not limited or cannot limit its liability.

*Reversed in part; affirmed in part.*