**Lister v. Bankers Life**            **CV-02-83-B     09/05/02**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Althea Lister**

   **v.**                                Civil No. 02-83-B
                                         Opinion No. 2002 DNH 163
**Bankers Life and**
**Casualty Company**

### MEMORANDUM AND ORDER

The plaintiff, Althea Lister, filed suit against the defendant, Bankers Life and Casualty Company. Lister seeks a declaratory judgment (Count I) that she is entitled to coverage under the home health care insurance policy she purchased from Bankers. See Amend. Pet. (Doc. No. 9) ¶¶ 47-53. The plaintiff also seeks relief for bad faith breach of contract (Count II), intentional infliction of emotional distress (Count III), and consumer fraud under N.H. Rev. Stat. Ann. ch. 358-A (Count IV). See id. ¶¶ 54-86.

Bankers moves to dismiss Count II, arguing that it is "premature in light of the pendency of [Lister's] declaratory judgment claim." Def's. Mot. to Dismiss (Doc. No. 13) ¶ 6. It also moves to dismiss Counts III and IV pursuant to Federal Rule

of Civil Procedure 12(b)(6). For the following reasons, I grant Bankers' motion as it pertains to Count IV, and deny the motion as it pertains to Counts II and III.

## I. <u>STANDARD OF REVIEW</u>

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." <u>Martin v. Applied Cellular Technology, Inc.</u>, 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." <u>Langadinos v. American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000) (quotation omitted). The issue is not "what the plaintiff is required ultimately to <u>prove</u> in order to prevail on her claim, but rather what she is required to <u>plead</u> in order to be permitted to develop her case for eventual adjudication on the merits." <u>Gorski v. New Hampshire Dept. of Corrections</u>, 290 F.3d 466, 472 (1st Cir. 2002) (emphasis in original).

-2-

## II. <u>FACTS</u>

Crediting the allegations set forth in Lister's amended petition as true, and drawing all reasonable inferences therefrom in the light most favorable to her, the pertinent facts appear as follows.

Lister, an elderly woman, discussed purchasing a home health care insurance policy with Bryan Clark, a representative of Bankers. Clark befriended her in order to obtain her business and to "create an impression that Bankers would be approachable and easy to work with if she ever had a claim." Amend. Pet. ¶¶ 63-64. Because of his efforts to gain her trust, Lister looked upon him "as a personal and family friend." <u>Id.</u> ¶ 25. In their discussions about home health care insurance, Clark told her that "she needed insurance coverage for medications, domestic care, and medical supplies so that if she were sick, she could continue to live at home and not 'end up in a nursing home.'" <u>Id.</u> ¶ 5. He assured her that the policy would "cover whatever was needed," and that "[e]verything would be taken care of." <u>Id.</u> ¶¶ 6-7. Relying upon his representations and Bankers' promotional materials, Lister purchased a home health care policy on March 30, 1998.

On March 16, 2001, Lister was hospitalized because of severe coronary artery disease and angina.  She returned to the hospital on May 14, 2001 due to the same conditions.  Upon release from her second hospital stay, her doctor, Dr. VanderLinde, certified that she was unable to perform some basic activities of daily living without assistance.  The physician claim form and home health care plan, which Dr. VanderLinde completed, stated that "[Lister] needs homemaking services as she is unable to perform these duties due to her heart disease." Id. ¶ 17.  Dr. VanderLinde ordered her to obtain the home services of a registered nurse, occupational therapist, and physical therapist.

Based upon Dr. VanderLinde's orders, Lister's daughter, Cindy Addario, and granddaughter, Joyce Ninness, contacted Clark and his supervisor, Gary Asker, to make a claim for benefits under the policy.  Initially, Clark told Ninness that Bankers "will pay for whatever the doctor deems medically necessary," and instructed her to "[g]et grammy whatever services she needs and the policy is now active." Id. ¶ 21.  However, "[i]mmediately after [Lister] made a claim, the agents refused to assist her in processing it and actively avoided her." Id. ¶ 65.  During one of her attempts to seek assistance from Bankers on behalf of her

grandmother, Ninness overheard Clark state "I don't want to deal with those people." Id. ¶ 24. The plaintiff was "shocked, hurt, and betrayed by [the agents'] conduct and thought she had done something wrong that offended [them] when she made a claim for coverage. This caused her substantial emotional distress at a time when she should have been focused on recovery." Id. ¶ 27.

After repeated attempts to file her claim and receive coverage under her policy, Bankers denied Lister's claim, alleging that she was not receiving personal care services under a doctor's home health care plan. This decision was rendered despite Dr. VanderLinde's certified home health care plan specifically ordering personal care services, which was filed with Lister's claim. Lister suffered an angina attack due to Bankers' denial of coverage.

Lister, with the assistance of counsel, asked Bankers to reconsider its decision. Bankers again denied coverage, this time on the grounds that she did not need assistance with two or more activities of daily living, as allegedly required by the policy. A new letter from Dr. VanderLinde was submitted to Bankers, which stated that the Lister was unable to walk unassisted, bathe and wash her hair, or shop and prepare food.

Bankers denied the claim for the third time, again claiming that she did not need assistance with two or more activities of daily living.

## III.  DISCUSSION

### A.  Count II, Bad Faith Breach of Contract

Bankers argues that an insured may only bring a bad faith breach of contract claim after it has obtained a declaratory judgment in a separate action that the insured's policy provides the coverage in dispute.  In support of this contention, Bankers cites Jarvis v. Prudential Ins. Co., 122 N.H. 648, 653 (1982), which states:

> The underlying factor in determining whether there has been a bad-faith breach of contract is whether the terms of the insurance policy cover the services [in dispute].  A petition for declaratory judgment is pending in the superior court to determine this question.  If it is determined in the declaratory judgment action that the plaintiffs' policy did cover the services [in dispute], the plaintiffs will then, and only then, be able to assert their claim that the defendant's denial of benefits was in bad faith.

Logic dictates that if an insured is not entitled to the coverage in dispute, then the insured cannot maintain an action for breach of contract – in bad faith or otherwise - for failure to provide said coverage.  If, as in Jarvis, an insured opts to

bring two separate actions - one for declaratory judgment on the issue of coverage, and one for breach of contract - judicial economy is indeed best served by dismissing the breach of contract claim as premature.  I glean no more and no less from <u>Jarvis</u>.  Thus, I reject Bankers' argument that <u>Jarvis</u> somehow bars an insured, as here, from bringing a declaratory judgment and breach of contract claim in the same suit.  Bankers' argument for dismissing Count II is unavailing.[1]

## B.   <u>Count III, Intentional Infliction of Emotional Distress</u>

The New Hampshire Supreme Court has set forth the elements of intentional infliction of emotional distress as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

<u>Morancy v. Morancy</u>, 134 N.H. 493, 496 (1991) (quotation omitted); <u>see also</u> <u>Konefal v. Hollis/Brookline Coop. School Dist.</u>, 143 N.H. 256, 260 (1998).  The definition of "extreme and outrageous conduct" is guided by the Restatement (Second) of Torts, which

---

[1]  I note that the trier of fact can be directed to address the threshold question of coverage before addressing the remaining claims.

the New Hampshire Supreme Court has embraced. See Jarvis, 122 N.H. at 652 (referencing Restatement (Second) of Torts § 46); see also Morancy, 134 N.H. at 495-96. Restatement of Torts § 46, comment d, states:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Because Bankers believes that the alleged wrongful conduct is a simple breach of an insurance contract for which emotional distress damages are not available, it contends that the court should dismiss Lister's claim for intentional infliction of emotional distress. It also contends that the conduct alleged fails to rise to the level of extreme and outrageous, a necessary element of a claim for intentional infliction of emotional distress.

Bankers correctly points out that challenges to an insurer's benefits decision sound strictly in contract rather than tort law. See Lawton v. Great Southwest Fire Ins. Co., 118 N.H. 607, 613-14 (insurers wrongful or bad faith refusal to settle or pay a

claim pursuant to its contractual obligations does not give rise to a cause of action in tort); accord <u>Jarvis</u>, 122 N.H. at 652. Here, however, Lister's claim for intentional infliction of emotional distress rests upon more than mere allegations that her coverage was wrongfully delayed or denied and, thus, this case falls outside the scope of <u>Lawton</u> and <u>Jarvis</u>.

As for the allegations of extreme and outrageous conduct, it can reasonably be inferred from Lister's allegations that Bankers took advantage of an elderly woman and then treated her with utter disregard when she fell ill and needed assistance understanding her policy and filing a claim. Indeed, Bankers and its agents allegedly assured her that Bankers "would be approachable and easy to work with if she ever had a claim." Amend. Pet. ¶ 64. However, when she fell seriously ill, Bankers and its agents "refused to assist her in processing it and actively avoided her." <u>Id.</u> ¶ 65. Given the liberal standard of review that applies at this stage in the case, <u>see generally</u> <u>Gorski</u>, <u>supra</u>, I conclude that Lister's intentional infliction of emotional distress claim is sufficient to withstand Bankers' motion to dismiss. I reach this conclusion without prejudice to Bankers' right to renew its argument in a motion for summary

judgment after discovery has been completed.

## C.    **Count IV, Consumer Protection**

Because Lister agrees to the dismissal of Count IV, no further discussion is warranted regarding this Count.  <u>See</u> Pls. Mem. Supp. Obj. to Mot. to Dismiss at 1.

## IV.    **CONCLUSION**

For the foregoing reasons, I grant Bankers' motion to dismiss (Doc. No. 13) Count IV, and deny its motion as it pertains to Counts II and III.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 5, 2002

cc:  Eleanor H. MacLellan, Esq.
     Douglas J. Miller, Esq.